220 So.2d 451 (1968)
P & N INVESTMENT CORP., a Florida Corporation, Appellant,
v.
FLORIDA RANCHETTES, INC., a Florida Corporation, Appellee.
No. J-224.
District Court of Appeal of Florida. First District.
October 24, 1968.
As Amended on Rehearing February 27, 1969.
Hansford D. Tyler, Jr., Miami, for appellant.
Robert H. Matthews, New Smyrna Beach, for appellee.
Earl Faircloth, Atty. Gen., and T.T. Turnbull, Asst. Atty. Gen., as amici curiae; William M. Register, Jr., and Peter J. Winders, of Carlton, Fields, Ward, Emmanuel, Smith & Cutter, Tampa, as amici curiae; Warren E. Hall, Jr., and Gordon H. Harris, of Holland & Knight, Bartow, as amici curiae.
CARROLL, DONALD K., Judge.

ON PETITION FOR REHEARING GRANTED
The appellant and three amici curiae have filed petitions for rehearing addressed to *452 our opinion and judgment filed in this cause on October 24, 1968, affirming the final decree entered by the Circuit Court for Volusia County.
After careful consideration of the briefs submitted by the parties and the amici curiae and the oral argument at the hearing on the said petitions for rehearing, we have reached the conclusion that we erred in entering our opinion and judgment of October 24, 1968, and that we should have reversed the said final decree. Therefore, we hereby grant the said petitions, and amend our said opinion to read in its entirety as follows:
The defendant in a suit for a declaratory decree has appealed from an adverse final decree entered by the Circuit Court for Volusia County.
The question presented for our determination in this appeal, briefly stated, is whether, where each of the parties own a 50% interest to the mineral rights in certain land and the plaintiff also owns the fee simple title, the chancellor erred in declaring in effect that the plaintiff may mine, drill, or otherwise develop the said minerals without the express permission of the defendant, and in otherwise ruling upon the relative rights of the parties.
The undisputed facts are as follows:
In 1946 Garland W. Spencer and his wife conveyed the land in question to Eola Mack by a deed of conveyance containing this reservation: "Reserving and excepting, however, to the grantors, their heirs and assigns forever an undivided one-half interest in all of the oil, gas, and all other minerals underlying the above-described lands with the right to mine, drill for and develop the same." The said land was thereafter conveyed by mesne conveyances to the plaintiff, which now holds the title to the land. Similarly, by proper instruments of conveyance the defendant has acquired the mineral rights reserved by the Spencers in the above-quoted reservation-clause.
A dispute arose between the parties as to whether the defendant had the right to enter upon the land in question for the purpose of exploring for minerals and, if discovered, removing them from the land. The dispute being unresolved by the parties, the plaintiff filed the instant action seeking a declaration of the rights of the parties with respect to the said dispute.
Following the final hearing the Circuit Court entered the final decree appealed from herein. In that decree the court held that it had jurisdiction of the parties and subject-matter of the dispute; that the plaintiff's allegations are sufficient to entitle it to a declaration of the parties' rights; and that the defendant could not, in the absence of the plaintiff's specific permission "arbitrarily enter upon the land for exploration or mining purposes." In its appellate brief the defendant states that it "takes no specific exception" to the last-mentioned holding, but rather "accepts this rule. * *" The defendant contends, however, that the plaintiff and the defendant are tenants in common of the said undivided mineral rights and that the same logic which bars the defendant from entering upon the land to mine or develop its 50% of the mineral rights, applies equally to the plaintiff, as the owner of the fee and the remaining 50% of the minerals, so the plaintiff should not be allowed to mine or develop any minerals "without specific permission of, or an agreement of joint venture with, or having first acquired the interests of, the other owner or owners of fractional portions of the mineral rights."
In this appeal the defendant-appellant takes exception only to paragraphs numbered 5 and 6 of the said final decree, which paragraphs read as follows:
"5. The Court further finds and so decrees that in the event the plaintiff should mine or otherwise produce minerals from the land as covered by the retention of the mineral rights of the defendant, then, and in that event, the defendant would be entitled to 50% of *453 the minerals so mined or produced, less the cost of production thereof;
"6. The Court further finds that in the event the Plaintiff should explore for minerals or mine or produce minerals, that it cannot bind the Defendant without an express agreement, for the payment of a proportion of said exploration costs, over and above the amount received from the sale of the minerals; * * *."
In defense of the final decree appealed from, however, the plaintiff sets forth what it calls the "practical problem that is posed in this case, and similar cases throughout the State of Florida. * * *" Briefly stated, the plaintiff's description of that "practical problem" is as follows: when the original reservation of mineral rights was agreed to in 1946, the value of the land was low and the use of the land was strictly agricultural, but today, with the great influx of people into the State of Florida, the price of the land has become more dear and the use of the land has changed from agricultural to residential; the development of residential properties has caused the owners to turn to lending institutions for the proper financing of the development, but the reservation of mineral rights, with the right of exploration reserved to the original grantors, has caused those institutions "to look with a jaundiced eye at this property, which is so sorely needed for residential development;" and the title examiner, "fearing the worst that could possibly happen under the circumstances, is quick to bring to the attention of any prospective purchaser the possibility that at some future date oil rigs or excavating machinery might be operating in the front yard of the new home owner."
It is impossible to determine with any certainty just what influence the foregoing "practical problem" considerations or any of them may have had upon the court when it entered the final decree.
As stated above, the defendant-appellant concedes that it should not explore or mine the minerals without the consent of the plaintiff but contends that this rule should apply the other way around. Valid as these considerations might have been if this had been a case of first impression in this country and if there had been no judicial precedents as to the questions before us, we must recognize the fact that there are ample precedents in other jurisdictions which should have a persuasive, if not a controlling, effect upon our determination in this appeal.
The special circumstance that makes difficult the determination of this appeal is the fact that the plaintiff is not only the owner of the surface but is also the owner of 50% of the mineral estate. Because of this circumstance we shall discuss the plaintiff's rights as a surface owner and then his rights as the owner of half of the mineral estate. First as to its surface rights:
We are convinced that the weight of authority in this country, especially in the major oil-producing states, is as follows: When the surface estate is severed from the mineral estate, the mineral estate is the dominant estate and, therefore, the owner of the mineral estate has the right of ingress and egress to explore for, locate, and remove the minerals, but he cannot so abuse the surface estate so as unreasonably to injure or destroy its value and is answerable in damages to the owner of the surface estate for any unreasonable injuries done.
One of the leading cases recognizing the just-summarized rule is Parker v. Texas Co., 326 S.W.2d 579 (Tex.Civ.App. 1959). For the citations to many cases upholding this rule see 58 C.J.S. Mines and Minerals § 159, pages 332 and 333.
Secondly, as to the mutual rights of the plaintiff and the defendant, each as the holder of 50% of the mineral estate, the cases are in considerable conflict. For a discussion of these conflicting decisions, see 38 Am.Jur.2d, Gas and Oil, Sec. 10, pages 487 and 488. Ae we read the authorities, *454 we have reached the conclusion that the prevailing view among the jurisdictions passing on the subject is that one of several co-owners of the mineral estate has the right to extract oil without the consent of the other owners and has the right to be reimbursed for the reasonable and necessary expenses of extraction and marketing, all subject to the right of the nonconsenting mineral owner to an accounting. One of the leading cases recognizing this rule is Prairie Oil & Gas Co. v. Allen, 2 F.2d 566, 40 A.L.R. 1389 (U.S.C.C.A., 8th Cir., 1924).
Since several provisions of the final decree appealed from appear to conflict with the above two general rules which we conceive to be the weight of authority in this country and which we believe are applicable here, that decree must be, and it is, reversed, and the cause remanded with directions for further proceedings consistent with the views hereinabove set forth.
Reversed and remanded with directions.
WIGGINTON, C.J., and SPECTOR, J., concur.