**William F. MOORE, Plaintiff-Appellee,**

v.

**M. M. OVERSTREET and Jeanette Overstreet, his wife, Defendants-Appellants.**

**No. 29569.**

United States Court of Appeals, Fifth Circuit.

Nov. 25, 1970.

---

1. Neither has the defendant-appellee filed a brief in this appeal.

Edwin C. Cluster, Greene, Ayres, Swigert, Cluster & Tucker, Ocala, Fla., for defendants-appellants.

Ned F. Sinder, E. Randolph Bentley, Bentley, Miller, Sinder & Ellsworth, Lakeland, Fla., for plaintiff-appellee.

Before TUTTLE, DYER and SIMPSON, Circuit Judges.

PER CURIAM:

This is an appeal by the Overstreets, defendants below, from a judgment notwithstanding the verdict in favor of Moore. We affirm.

Moore brought suit for damages in the amount of $50,000, the amount which Moore as purchaser had deposited with the Overstreets as Seller under a contract for the purchase of 1,500 acres of land, more or less, in Osceola County, Florida. The contract was for marketable title, subject to mineral rights outstanding "not presently owned by the Seller". It was known to both parties, but not verified by inspection of land records, that Tufts College held some rights in the property under prior recorded conveyances. Moore found after examination of the title that the rights held by Tufts College to about 600 acres of the land involved included not only mineral rights but also exceptionally broad surface rights which would impair his use of the land. Moore complained that the Tufts reservation prevented the Overstreets from delivering the title represented in the land purchase agreement and refused to complete the transaction, requesting refund of his deposit of $50,000. The Overstreets refused to return the deposit and suit was instituted in the court below.

By pre-trial ruling the district judge held that as a matter of law the title was not marketable, and that the only question for trial was whether the rights held by Tufts College were contemplated by the parties in the reservation of "mineral rights" provided in the land purchase agreement. The case proceeded to trial on counts alleging breach of contract and misrepresentation of facts. The jury found for the Overstreets by its answers to special interrogatories. On motion the district judge entered a judgment notwithstanding the verdict for Moore.

Appellants do not contest the appellee's assertion that the reservation of rights to Tufts College contains a reservation of unusually broad powers to utilize the surface of the property in conjunction with any efforts to exploit the rights to any mineral deposits.[1] The reservation

---

1. The pertinent portion of the reservation reads as follows:

    "Saving, reserving and excepting out of the grant herein made all of the minerals, oil, petroleum products and gas under the surface of the said premises with power for the grantor, its successors and assigns, to take all usual, necessary or convenient means for working, getting, laying up, dressing,

in the land purchase agreement however, was merely of "Any mineral rights outstanding not presently owned by the Seller." Appellants point out that Overstreet had never investigated and had no knowledge of the nature or extent of the reservation of rights held by Tufts.[2] But they argue that while both parties were aware of an outstanding interest held by Tufts neither party endeavored to determine the exact nature of the reservation and that in fact the parties contemplated an "as is" sale by the use of the words "mineral rights" in the contract.

The appellee Moore relied in the lower court as well as before us on P & N Investment Corporation v. Florida Ranchettes, Inc., 220 So.2d 451 (Fla.App.1969). That case is cited as holding that as a matter of law a reservation of "mineral rights" does not encompass the type of broad surface rights reserved to Tufts in this case.[3] Appellee also argued below as here that no evidence was adduced at the trial by which a jury could find for the Overstreets. The trial judge cited P & N Investment in his order for judgment notwithstanding the verdict. It is obvious however that he viewed the words "mineral rights" as ambiguous, for he allowed the admission of parol evidence in order to establish more clearly what the parties had contemplated in the drafting of the purchase agreement.

His order for judgment notwithstanding the verdict is predicated on the ground that no evidence was adduced to show that the parties contemplated more than the usual mineral reservations in the adoption of the land purchase contract.

We have searched the record and find no error in the district court's ruling that the evidence was insufficient to allow a jury to exercise its judgment in the case. See Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365. The only evidence which the Overstreets presented in favor of a broad construction of the crucial contract language was the admitted fact that Moore was a businessman experienced in real estate dealings involving mineral rights. They argue that for a man of Moore's business background to enter into such a contract without first investigating the title documents indicates that the parties contemplated an "as is" sale. This shred of evidence without further support is clearly insufficient to show for what the parties actually bargained. Evidence indicating that the parties intended the words "mineral rights" to have any special meaning in this context is completely lacking. We think that this case is controlled by P & N Investment Corporation, supra.

The judgment n. o. v. was proper. It is

Affirmed.

making merchantable, taking away and marketing said minerals, oil, petroleum products and gas and for the purposes and for any other purposes in connection with the said reservations and exceptions, to make and repair tunnels and sewers and to lay, maintain and repair pipes to convey water, oil, petroleum products and gas to and from any manufactory, tank, storage building or receptacle, or other building or structure; to investigate, explore, prospect, drill and mine for and produce oil, gas and all other minerals; to erect and maintain telephone and telegraph lines, power stations and other structures thereon convenient for producing, saving, taking care of, treating, storing, transporting and manufacturing said minerals, oil, petroleum products and gas and the housing of employees, and further saving and reserving * * * and use to the fullest the reservations and exceptions herein contained; * * *."

2. The reservation of rights to Tufts was created in 1943 when the then owner gave a deed to Irlo Bronson and wife. The Overstreets bought the property from the Bronsons with the reservation outstanding.

3. It is agreed that Florida law governs the case.