**GLASEL v. JONES, et al.**

Nos. 521 and 608.

Circuit Court, Okeechobee County.

September 14, 1971.

</div>

Robert B. Butler of Ellis, Spencer & Butler, Hollywood, for plaintiff.

Peter J. Winders and David G. Mulock of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for defendants.

D. C. SMITH, Circuit Judge.

*Final judgment:* The evidence shows that these actions arise out of reservations and grants of certain oil, gas and mineral rights contained in three deeds and a contract pertaining thereto. The three deeds relate to the following real estate, herein called "the property" —

The west ¾ of Section 2, Township 36 south, Range 35 east, less therefrom the north 660' of the east 660' of the west 3965.67' of said Section

2; all that part of Section 3 lying east of the east boundary of State Road 15 (U. S. Highway 441); and the west ¾ of the north ½ of Section 11, all in Township 36 South, Range 35 East, said lands situate, lying and being in Okeechobee County, Florida.

On June 8, 1940, Consolidated Naval Stores Co., (herein "Consolidated") conveyed the property to B. W. Whitten. The deed contained a reservation of oil, gas and sulphur rights which was to terminate unless oil or gas were found in Florida "in commercial quantities" within ten years.

Consolidated, on December 29, 1953, conveyed to defendants, Liese, Moody, Marine Gathering Co., and Texas Title Co., certain "mineral royalty interests." The operative language in this deed reads as follows —

. . . Consolidated Naval Stores Company . . . has granted, bargained, sold and conveyed, and does by these presents grant, bargain, sell and convey . . . the mineral royalty interests hereinafter set out.

The royalty interests and rights herein sold, transferred and conveyed are:

(a) One thirty-second (1/32) of the whole of any oil, gas or other minerals, except sulphur, on or under and to be produced from said lands; delivery of said royalties to be made to the purchaser herein in the same manner as is provided for the delivery of royalties by any present or future mineral lease affecting said lands.

(b) Twelve and one-half cents ($.12½) per long ton for all sulphur produced from said lands, payments therefor to be made monthly for sulphur marketed.

This sale and transfer is made and accepted subject to an oil, gas and mineral lease or leases now affecting said lands but the royalties hereinabove described shall be delivered and/or paid to the purchaser out of and deducted from the royalties reserved to the lessor in said lease or leases. This sale and transfer, however, is not limited to royalties accruing under the lease or leases presently affecting said lands but the rights herein granted are and shall remain a charge and burden on the land herein described and binding on any future owners or lessees of said lands and, in the event of the termination of the present lease or leases, the said royalties shall be delivered and/or paid out of the whole of any oil, gas or other minerals produced from said lands by the owner, lessee or lessees, or anyone else operating thereon.

The grantor herein reserves the right to grant future leases affecting said lands so long as there shall be included therein, for the benefit of the purchaser herein, its successors and assigns, the royalty rights herein conveyed; and the grantor further reserves the right to collect and retain all bonuses and rentals paid for or in consideration with any future lease or leases, or accruing under the lease or leases now outstanding.

By a similar deed dated December 29, 1953, Consolidated conveyed identical "mineral royalty interests" to Liberty Oil and Royalty Company. Marine Gathering and Liberty Oil conveyed their royalty interests to Commonwealth Oil Company, which subsequently merged with defendant Jupiter Corporation.

The property later was acquired by defendants Roger L. Jones and Mildred E. Jones, who sold it to the plaintiff and took back a promissory note and mortgage in 1963. The Joneses also obtained and sold to plaintiff the mineral rights retained by Consolidated. Plaintiff thus purchased the entire surface interest and all mineral interests save whatever was created by the deeds in question to Liese, Moody, Marine Gathering Company and Texas Title Company, and to Liberty Oil and Royalty Company.

At the time of the conveyance to plaintiff, the parties executed a contract which provided, in part, as follows:

THIS AGREEMENT made and entered into this 11th day of February, 1963, by and between Mildred E. Jones joined by Roger L. Jones, her husband, of the County of Okeechobee, State of Florida, hereinafter referred to as "First Party," and Paul Glasel, as Trustee, of the County of Broward, State of Florida, hereinafter referred to as "Second Party."

WITNESSETH:

WHEREAS, on the 31st day of December, 1962, First Party sold, for a valuable consideration, to Second Party the following described lands situate by and being in the County of Okeechobee, State of Florida, to wit:

(Description of property)

AND WHEREAS, it appears from the public records of Okeechobee County, Florida, that G. Burton Liese, Alvin Moody, Texas Title Company and Commonwealth Oil Company are the holders of certain royalty interests in said land and that Second Party has requested First Party to file a partition action in the Circuit Court of Okeechobee County, Florida, against the said G. Burton Liese, Alvin Moody, Texas Title Company and Commonwealth Oil Company, for the purpose of partitioning the royalty interests held by said parties from the remainder of the fee owned by Second Party and the sale of the above-described lands to Second Party by First Party.

NOW THEREFORE, it is hereby mutually understood and agreed by and between the parties hereto:

1. First Party agrees for T. W. Conely, Jr., Attorney at Law, Okeechobee County, Florida, to file an action in partition on behalf of Second Party and First Party will pay all costs of such proceeds [sic]; and in the event the court decrees payment to the defendants in said suit holding the royalty interests that First Party will pay said amount including all costs involved.

2. In the event the court fails to enter a decree partitioning said royalty interests, Second Party agrees to make payment of the note secured by the mortgage and covering the above-described lands and dated December 31, 1962, without protest.

<div align="center">

*Mildred E. Jones*
*Roger L. Jones*
First Party
*Paul Glasel*
Second Party

</div>

Payments were made on the note from 1963 through 1968. The payment due December 31, 1969 was not paid to defendants Jones when due, but was later paid into the registry of the court on May 28, 1970. The payment due December 31, 1970 has not been made.

<div align="center">

*Procedural background*

</div>

### A. Case 521

In April, 1970 plaintiff filed a three-count complaint against defendants Jones. He sought a temporary injunction preventing defendants Jones from accelerating the due date on the promissory note and asked for specific performance of the agreement dated February 11, 1963 in count I, and partition of the royalty interests in count II. In addition, plaintiff in count III asked for damages in excess of $500 for the failure of the Joneses to perform the agreement.

The defendants Jones answered, denying all material allegations in the complaint, stated affirmative defenses (including impossibility of performance because oil royalty interests cannot be partitioned from the mineral fee) and counterclaimed to obtain declaratory relief (excusing performance on the grounds of impossibility of performance and failure of plaintiff to mitigate damages) and to foreclose the mortgage.

### B. Case 608.

Plaintiff filed a second action against defendants Jones, adding defendants Liese, Moody, Texas Title Company, the Jupiter Corporation and Commonwealth Oil Company, seeking declaratory relief in count I and an order partitioning the mineral interests with an award of costs and attorneys fees in count II.

Defendants answered the second complaint, again denying all material allegations, admitting the need for declaratory judgment, and denying the existence of any partitionable interest. The cases were consolidated for all purposes and came on for non-jury trial on April 13, 1971. Final argument was deferred until the record was transcribed, and was heard July 26, 1971.

*Findings of fact*

1. The question of when oil and gas were first found in Florida "in commercial quantities" was resolved by stipulation, in accord with the affidavit of Dr. Robert O. Vernon, the State Geologist. Oil and gas were discovered in Florida in 1943, within ten years from the date of the execution of the deed from Consolidated to Whitten. As a consequence, the oil, gas and sulphur reservations in that deed became perpetual.

2. As to the agreement dated February 11, 1963, it is the finding of this court, based both upon the testimony given at trial and upon a reasonable interpretation of the language of the document, that —

a. The Joneses executed the contract in connection with the sale of the property to plaintiff.

b. The obligation incurred by defendants Jones was to pay T. W. Conely, Jr. to bring an action *on behalf of plaintiff* to partition the outstanding royalty interests from the remainder of the fee. Had the action been successful, the defendants Jones would have been obligated to pay all costs. If the partition action had failed, plaintiff agreed to make payments on the note without protest.

c. In 1963, the Joneses paid Conely a fee of $500 for the purpose of bringing a partition action, thus meeting their obligation in full.

d. Judge Conely, who died in 1969, did not file a partition suit on behalf of plaintiff.

e. The defendants Jones were not informed until after the death of T. W. Conely, Jr. that no partition action had been filed.

f. All correspondence between plaintiff, who is a lawyer, and T. W. Conely, Jr., supports the construction that although the Joneses were to pay Conely to represent plaintiff, Conely came to the conclusion that an action in partition would not lie.

3. The nature of the outstanding interest created by the "mineral royalty deeds" is a mixed question of law and fact. The deeds from Consolidated to Liese, et al., and to Liberty identify the interest conveyed as "mineral royalty interests" and recite that a royalty interest of 1/32 of the whole of any oil, gas or mineral "produced" shall inure to the grantee. The use of the term "royalty," which appears eight times in each instrument, clearly demonstrates that Consolidated intended to grant a royalty interest. It is recited in the instruments that "the rights herein granted are and shall remain a charge and burden on the land . . .", language identical to that used by the Lawyers' Title Guaranty Fund to describe a royalty. See Lawyer's Title Guaranty Fund Note TN 265-59. The grantor

reserved the right to make future leases, which also conforms to the proposition that the grantees received royalty interests.

There are no Florida decisions relating to the creation of royalty interests in oil and gas. In Neel v. Rudman, Fla. 1948, 33 So.2d 234, the Florida Supreme Court noted that there is a difference between a royalty interest and a mineral interest. A general discussion of the question appears in 3A Summers, *Oil and Gas*, §599. In Pinchback v. Gulf Oil Corporation, Tex. Civ. App. 1951, 242 S.W. 2d 242, it was held that a conveyance will be construed as creating a royalty interest and not a mineral fee if the language suggests that the fraction of oil or gas granted or reserved is "produced" rather than "in" the land. Other cases hold that the use of the words "royalty," "profits" or "produced" suggests an intent to create a royalty interest rather than an interest in the mineral fee. Lively v. Federal Land Bank of Louisville, Ky. 1943, 176 S.W. 2d 264; Gulf Refining Co. v. Goode, La. 1947, 32 So.2d 904; Hardy v. Greathouse, Ill. 1950, 94 N.E. 2d 134.

Set forth below is a comparison of the characteristics of a "perpetual non-participating royalty interest" and the language used in the "mineral royalty deeds" in question.

| "perpetual nonparticipating royalty interest" (from 3A Summer, supra, §572) | language from "mineral royalty deeds," Exhibits "B" and "E", Case No. 608 — |
|---|---|
| a. The royalty owner does not join in execution of future oil, gas and mineral leases, nor can he require the mineral fee owner to execute a lease. | "The grantor herein reserves the right to grant future leases affecting said lands . . ." |
| b. The royalty owner does not share in the delay rentals or cash bonus paid in connection with existing or future leases | ". . . the grantor further reserves the right to collect and retain all bonuses and rentals paid for or in connection with any future lease or leases . . ." |
| c. The royalty owner has no right of entry onto or across the property for exploration or other purposes. | ". . . the rights herein granted are and shall remain a charge and burden upon the land herein described. |
| d. The royalty owner has no right to possession, present or future, of the property. | |
| e. The royalty interest is considered a "burden" or a "charge" upon the land. | ". . . the rights herein granted are and shall remain a charge and burden upon the land herein described. |
| f. The royalty owner has a right to his specified portion of the production, if and when oil, gas or minerals are ever produced. | ". . . said royalties shall be delivered and/or paid out of the whole of any oil, gas or other minerals produced from said lands . . ." |

It is the finding of the court that the deeds in question were intended to and did in fact create royalty interests in the grantees.

*Conclusions of law*

## A. Characteristics of a Royalty Interest.

A royalty interest is entirely different from an interest in the mineral fee. Neel v. Rudman, supra. A mineral interest, simply stated, is an interest in the mineral fee. The mineral fee is usually merged with the free ownership of the surface, Lykes Bros., Inc. v. McConnell, Fla. App. 1959, 115 So.2d 606, but it may be separated. Dickinson v. Davis, Fla. 1969, 224 So.2d 262. The owner of all or a portion of the mineral fee may enter the property to explore for and produce the minerals thereunder, even if the surface fee is owned by someone else. P & N Investment Corporation v. Florida Ranchettes, Fla. App. 1969, 220 So.2d 451. The mineral fee owner may execute a lease giving exploration and production rights to a lessee. 1A Summers, supra, §132. Cotenants of the *mineral fee* may partition their interests. Rudman v. Baine, Fla. App. 1961, 133 So.2d 760.

A surface and mineral fee owner has three sorts of legal interests after he executes an oil, gas and mineral lease, namely — (1) the surface interest (subject to easements for exploration and production in favor of the lessee); (2) the right to receive rent and royalties; and (3) a reversionary interest in the minerals in place at the termination of the lease. 3A Summers, supra §572. Any of these three interests may be split off and conveyed by the lessor. 1A Summers, supra, §131.

A royalty interest, which may exist independently of other interests in minerals, is in the nature of a contract right. The characteristics of a "perpetual nonparticipating royalty interest," according to 3A Summers, supra, §572, are as follows —

a. The royalty owner does not join in the execution of future oil and gas leases, nor can he require that a lease be executed. (Only a mineral owner can lease an interest in oil and gas in place. A royalty owner owns only an interest in the oil and gas after they are produced, and therefore has nothing to lease.)

b. The royalty owner does not share in the delay rentals or cash bonus paid in connection with existing or future leases.

c. The royalty owner has no right of entry onto or across the property for exploration or other purposes.

d. The royalty owner has no right to possession, present or future, of the property.

e. The royalty interest is considered a "burden" or "charge" upon the land. [See Lawyers' Title Guaranty Fund Note TN 265-59].

f.  The royalty owner has a right to his specified portion of the production, *if and when* oil, gas or minerals are ever produced.

See also Fields, "Minerals," vol. II, *Florida Real Property Practice,* §27.11, p. 491.

## B. Partition of Royalty Interests.

Fla. Stat. 64.031 (1969) states that a partition action may be filed by "any one or more of several joint tenants, tenants in common or coparceners or others interested in the lands to be divided." Another prerequisite to the maintenance of a partition action is the existence of a possessory right. Only those in possession, or having the right to immediate possession, are entitled to partition. Weed v. Knox, Fla. 1946, 27 So.2d 419; Black v. Miller, Fla. App. 1969, 119 So.2d 106; Radford v. Radford, Fla. App. 1960, 117 So.2d 522.

In 3 Summers, supra, §537, p. 494, it is said —

> An oil and gas royalty interest . . . is usually not held to be a partitionable interest because the owner thereof is not entitled to possession and is not a tenant in common with the owners of the mineral fee or of the leasehold.

There are no Florida cases involving attempts to partition a royalty interest from the mineral fee. A writer in the Florida Bar Journal did describe a royalty interest as follows —

> A royalty interest carries with it no leasing rights or powers, . . . *It is a non-possessory interest in land and, hence, is not subject to partition,* nor does the owner of the royalty interest have any right to drill and produce. Walker, "Basic Problems of Landowners and their Lawyers in Areas of Oil and Gas Development," 31 Florida Bar Journal 6, 12-13. (Emphasis supplied.)

Several cases are reported from Texas which deal with this problem. In Lane v. Hughes, Tex. Civ. App. 1950, 228 S.W. 2d 986, an action was brought to sever a royalty interest from the mineral interest. It was held that partition was unavailable because (1) the plaintiff and defendant were not joint tenants or tenants in common and (2) there can be no partition of interests where there is no mutual right to possession. The court said, at p. 989 —

> Partition acts upon the possession and not upon the title. It creates no new title but merely severs the previous unity existing between the joint owners or tenants in common. If there is no unity in the right of possession, there can be no forced partition.

In Douglas v. Butcher, Tex. Civ. App. 1954, 272 S.W. 2d 553, the court ruled that royalty owners were not necessary parties to a partition suit because they lack a possessory interest. Whether a

royalty interest is considered to be a personal property interest or a real property interest, it is clear that it is not a possessory interest and partition, which is a possessory remedy, will not lie.

It is accordingly ordered, adjudged and decreed that —

1. Count I, case 521, in which plaintiff seeks a temporary injunction preventing defendants Jones from accelerating the due date on the promissory note, is dismissed, with prejudice.

2. Count II, case 521, in which plaintiff seeks specific performance of the agreement of February 11, 1963, is dismissed, with prejudice, for the reason that defendants Jones fulfilled their obligations under the terms of the contract and for the additional reasons that the agreement was impossible to perform because (1) royalty interests cannot be partitioned from the mineral fee, and (2) T. W. Conely, Jr. is deceased.

3. Count III, case 521, in which plaintiff seeks damages for breach of contract, is dismissed, with prejudice, for the reason that no breach occurred and the additional reason that performance of the contract was impossible.

4. The court finds that count I, case 608, in which plaintiff seeks declaratory relief, involves suitable subject for such relief as there exists a genuine dispute between the parties concerning the nature of their respective rights. Defendants admit the need for a declaration of rights. It is hereby decreed that the interests owned by defendants Liese, Moody, Texas Title Company and The Jupiter Corporation are mineral royalty interests, and that those mineral royalty interests have the characteristics and attributes of mineral royalty interests as follows —

a. The royalty owner does not join in the execution of future oil and gas leases, nor can he require that a lease be executed. (Only a mineral owner can lease an interest in oil and gas in place. A royalty owner owns only an interest in the oil and gas after they are produced, and therefore has nothing to lease.)

b. The royalty owner does not share in the delay rentals or cash bonus paid in connection with existing or future leases.

c. The royalty owner has no right of entry onto or across the property for exploration or other purposes.

d. The royalty owner has no right to possession, present or future, of the property.

e. The royalty interest is considered a "burden" or "charge" upon the land.

f. The royalty owner has a right to his specified portion of the production, *if and when* oil, gas or minerals are ever produced.

5. Count II, case 608, in which plaintiff seeks an order partitioning the mineral interest, is dismissed, with prejudice, for the reason that royalty interests are incapable of being partitioned as they confer no possessory right in the holder.

*Counterclaim for foreclosure*

Having disposed of all of the issues raised by the plaintiff's claims for relief in both complaints, the court will now consider the counterclaim to foreclose the mortgage in case 521.

The evidence shows that the plaintiff paid the principal and interest due December 31, 1969 into the registry of the court on May 28, 1970, and that the plaintiff has not paid the principal and interest due December 31, 1970.

It is clear from the findings above that plaintiff's refusal to make payments on the note was without justification and that plaintiff is in default. Rather than entering a decree of foreclosure, however, the court believes that the circumstances of this case require that the plaintiff be afforded an opportunity to bring the payments up to date and to continue to make timely payments in the future.

It is accordingly ordered, directed and decreed that —

(1) The clerk is directed to pay forthwith to defendants Roger L. Jones and Mildred E. Jones that payment deposited into the registry of the court on May 28, 1970, representing principal in the amount of $18,029.30 and interest in the amount of $4,327.20.

(2) Plaintiff is hereby directed to pay to defendants Roger L. Jones and Mildred E. Jones, within 60 days of the entry of this order, the following amounts —

a) Interest at 6% per annum on the principal of $18,029.30, deposited into the registry of the court on May 28, 1970, from December 31, 1969, to May 28, 1970. ........................ $    772.69

b) The principal amount of $18,029.30, together with the interest in the amount of $3,245.27, which was due December 31, 1970, totaling ......................................................... 21,274.57

c) Interest at 6% per annum on the amount of $21,274.57 (that being the sum of the principal and interest due December 31, 1970), to be computed from December 31, 1970 to the date of payment.

Upon receipt of all payments as directed in this order, defendants Roger L. Jones and Mildred E. Jones shall execute and deliver to plaintiff proper partial releases as described and required in the mortgage.

If plaintiff shall fail to pay the amounts to defendants Roger L. Jones and Mildred E. Jones as directed by this order, then and in that event, this court shall, without further notice or hearing, enter an order of foreclosure, decreeing the lien of defendants Jones to be prior, paramount and superior to all rights, claims and interests of plaintiff and all other persons, and directing that the property be sold and the proceeds paid over to defendants Jones.

This court retains jurisdiction of this cause for the purpose of making all further orders and decrees as may be necessary and proper.