J. Irwin Shapiro, J.
Plaintiffs brought this action for a mandatory injunction requiring the defendants to remove obstructions installed and constructed on a certain easement or right of way which is claimed to exist over the land of the defendants.
Prior to March 26, 1949 all of the property now owned by the parties to this action was owned by Willis A. Schauf and Elbert 0. Wright. On that date, the latter entered into an agreement with Charles and Frieda Vogel, the owners of certain property contiguous to theirs, and with the Eoslyn Savings Bank, the owner and holder of a mortgage to secure the payment of a bond in the principal sum of $6,000. It was recorded in the Queens Begister’s office on May 6, 1949, in Liber 5757 of Conveyances at page 221; under the agreement mutual easements to the westerly side of Little Neck Parkway were created running to said parties ‘ ‘ their heirs and assigns ’ ’ to use 5 feet of the Vogel property and 6 feet of that portion of the Schauf and Wright property, which is now owned by the defendants, “ for the purpose of ingress and egress over the same, restricted, however, to walking and pleasure conveyances.”
On April 22, 1949 Schauf and Wright conveyed the three northerly lots of their property affected by the above agreement and shown on the survey of Walter I. Browne, dated March 29, 1949, to Charles F. and Eleanor Allen, his wife, by deed recorded in the Queens Begister’s office on May 6, 1949, in Liber 5757 of Conveyances at page 209. Charles F. Allen died since the institution of this action leaving Eleanor Allen, his wife, as *764 one of the plaintiffs, the title to the whole having been vested in her by virtue of a tenancy by the entirety. Also, on April 22, 1949, Schauf and Wright conveyed the two southerly lots shown on said survey to the plaintiff Anna Davis which deed was recorded in the Queens Register’s office on May 6, 1949, in Liber 5757 of Conveyances at page 213. In these two deeds, an 11-foot easement “for walking and pleasure conveyances” was granted along the westerly boundary of the lots conveyed in favor of Davis over the Allen property and in favor of the Allens over the Davis property and continuing to and connecting with the 11-foot right of way previously created by the agreement dated March 26, 1949, between the grantors and Charles and Frieda Vogel. Both of these deeds stated that the conveyances were made:
‘ ‘ Together with and subject to an easement or right of way, connected with the above described easement to the westerly side of Little Neck Parkway, contained in easement agreement dated March 26, 1949 between the parties of the first part and Charles Vogel and Freída Vogel and the Roslyn Savings Bank and intended to be recorded simultaneously herewith.
‘ ‘ The above easements shall run with the land and shall bind and enure to the benefit of the heirs, administrators and assigns of the grantee herein.”
Subsequently the most northerly of the two lots owned by the plaintiff Davis was conveyed by her to one Huseman by deed recorded in the Queens Register’s office on May 29, 1950, in Liber 5956 of Conveyances at page 559. Huseman thereafter conveyed it to the plaintiffs Patrick J. and Norma A. Hayes, by deed recorded in the Queens Register’s office on October 29, 1956, in Liber 6924 of Conveyances at page 310. The conveyance made in the first of these deeds stated: ‘ ‘ Together with and subject to all easements of record affecting the above described property.” The Huseman deed — to the plaintiffs Hayes — stated:
“together with an easement or right of way as set forth in an Agreement recorded in Liber 5757, of Conveyances, page 221,
‘ ‘ together with an easement or right of way 11 feet wide as set forth in a deed recorded in Liber 5757, cp. 213.
“ subject to a similar easement over the rear 11 feet of the premises described above as set forth in said deed recorded in Liber 5757, of Conveyances, page 213.”
The title to the property now owned by the defendant Jeanette S. Greenberg, over which 6 feet of the 11-foot easement created *765 by the agreement of March 26,1949, runs to Little Neck Parkway, is derived through mesne conveyances as follows :
By 2 deeds, one a correction deed, dated February 5, 1951, from Schauf and Wright to Little Neck Jewish Center, Inc.
By deed dated March 1,1955, from Little Neck Jewish Center, Inc., to Sylvia L. Sherman.
By deed dated August 6, 1956, from Sylvia L. Sherman to Dominick Yirilli.
By deed dated December 12, 1957, from Dominick Yirilli to Louis Greenberg and Jeanette S. Greenberg, his wife.
By deed dated March 1, 1958, from Louis Greenberg to Jeanette S. Greenberg.
The deed from Schauf and Wright to the Little Neck Jewish Center, Inc., dated February 5,1951, and recorded in the Queens Register’s office on February 7, 1951, in Liber 6106 of Deeds at page 517, stated that the conveyance was made:
‘1 together with the benefit, and
1 ‘ subject to the burdens of an easement created by Agreement recorded in Liber 5757 Cp 221.”
The same provision was contained in the deeds from Little Neck Jewish Center, Inc., to Sylvia L. Sherman and from the latter to Dominick Yirilli. In the deed from the latter to Louis Greenberg and Jeanette S. Greenberg, his wife, and from Louis Greenberg to said Jeanette S. Greenberg, the language of a similar provision in said deeds reads as follows: “ together with the benefits and subject to the burdens of a certain Right of Way Agreement dated March 26, 1949 and recorded in Liber 5757 of Conveyances, page 221 on May 6,1949.”
When the defendants erected cement walks, a divider and hedges on the 6-foot portion of the easement created by the agreement of March 26,1949, plaintiffs protested and on January 8, 1958, through their attorney, demanded the removal of those obstructions because they interfered with the purposes for which the easement was created and prevented its use by the plaintiffs. The defendants failed to do so, and, indeed, installed and set in the ground metal pipes causing further and additional interference with the use of the right of way. Thereupon this action was commenced.
The answer of the defendants asserts a counterclaim for judgment declaring that the plaintiffs are barred from all claim to any easement over defendants’ land upon the grounds that will be hereinafter more fully discussed.
The first of these grounds is that the easement created by the agreement of March 26, 1949 was not specifically described *766 in the deeds to the plaintiffs but a mere reference to such an agreement was made to which the Vogels, strangers to the deeds, were parties. The easement, however, was fully described by metes and bounds in the recorded agreement of March 26, 1949 between the grantors and the Vogels and the deeds to Davis and Allen stated that the conveyance was made together with and subject to said easement or right of way contained in that easement agreement ‘ ‘ and intended to be recorded simultaneously ” with the deeds. Reference to the easement of record was made in the deeds under which plaintiffs Hayes obtained title to part of the Davis property, and each of the deeds in the chain of title to the defendants also made express reference to the right of way agreement, dated March 26, 1949. It was not necessary to recite in subsequent conveyances the metes and bounds and all the terms and conditions of the established easement of record in which it was provided that the agreement creating it “ shall run with the land” and the defendants took title to their land together with and subject to all easements of record affecting their property. Indeed, in the deed from Dominick Yirilli to the defendants, and from them hi the defendant Jeanette S. Greenberg, the date of the easement agreement, as well as the date of its recording and the liber and page, were specifically set forth.
The easement was created for the benefit of the land originally owned by the common grantors Schauf and Wright and the agreement creating it specifically provided that such easement was to enure to their benefit and “ their heirs and assigns.” The plaintiffs are such assigns and have succeeded to the rights of the original grantors, part of whose land was later transferred by mesne conveyances to the defendants, subject to the burden of this easement. The contention that the Vogels, parties of the second part to said agreement, received no corresponding-benefit in said easement is without merit, and, in any event, the Vogels have not complained. The conveyance of the right of way gave to the common grantors of the parties hereto, their heirs and assigns, the right of a nonobstructed passage over the land now owned by the defendants ‘ ‘ for the purpose of ingress and egress over the same, restricted, however, to walking- and pleasure conveyances ’ ’ and the agreement creating such easement specifically provided that it “ shall run with the land.”
Defendants’ contention that the plaintiffs have other means of access to their land because of other land conveyed to them, which fronts on a public street, is without merit. True, they own contiguous lots which face on a street. Those lots, however, *767 are separate and distinct from the land here involved and their frontage on another street cannot deprive plaintiffs of the right of way which was granted to them to Little Neck Parkway by instruments of record, recorded simultaneously with the recording of the easement agreement of March 26,1949. The lots here involved would be landlocked but for such easement in the likely event of a sale by the respective plaintiffs of their contiguous lots facing a public street, which lots each measure 40 feet in width and 103 feet in depth.
The easement with which we are concerned is not one created by implication as a result of necessity which might terminate when such necessity ceased to exist. The easement here was created by an express grant of a right of way, the enjoyment of which by the plaintiffs cannot be unilaterally destroyed by the defendants, who took title to their land subject thereto.
Defendants’ claim that the easement created by the agreement of March 26, 1949 has never been used for a driveway for any type of vehicle and was, in any event, abandoned except for walking is without merit. The plaintiff Davis testified that the easement was used for vehicles to gain access to her property and that her children had continuously used it for their bicycles. It was stipulated that if the other plaintiffs, who were available in the courtroom as witnesses, were called to testify, they would do so to the same effect. The court finds this continuous user to be a fact.
While it was conceded by the plaintiffs that fences were built separating their respective properties, with gates affording walking access along the 11-foot easement on the westerly boundary thereof created by the deeds to them dated April 22, 1949, which easement was largely landscaped, and that their cars, prior to the erection of the obstructions on the subject easement, were driven only up to such 11-foot easement which they used for walking to their respective properties through the gates in the fence mentioned above, this by no means is evidence that the easement was abandoned. An easement acquired by grant cannot be lost by mere nonuser for any length of time. As stated in Snell v. Levitt (110 N. Y. 595, 602-603): “Non-user for a period of twenty years, under such circumstances as show an intention to abandon and give up the easement, is sufficient to extinguish it; and even an abandonment for a shorter period, under such circumstances as show an intention to give up and release an easement, which is acted upon by the owner of the servient tenement so that it would work harm to him if the easement were thereafter asserted, would operate to extinguish the easement.” (Emphasis ours.) While *768 in that case the easement was held extinguished, the beneficiary thereof did so by an unequivocal act releasing the easement by agreement made for a consideration.
The subject of abandonment of easements created by grant was recently thoroughly expounded by the Appellate Division, Third Department, in Strevell v. Mink (6 A D 2d 350, affd. 6 N Y 2d 850). There the court held at page 352 that to show an extinguishment of an easement “ There must be conduct on the part of the easement owner manifesting an intent to exercise the easement no longer, and the acts relied upon to establish an abandonment must unequivocally evidence a clear intention to abandon ”. (Emphasis ours.)
No such intention on the part of the plaintiffs to abandon the easement has been shown here. The lone fact that the plaintiffs erected a fence along the rear line of their property and that the gate connecting the Davis property with the right of way was a narrow one, does not manifest an intent to exercise the easement no longer. As soon as the defendants erected the obstructions, plaintiffs objected and very promptly had their attorney write demanding removal thereof.
Welsh v. Taylor (134 N. Y. 450), upon which defendants rely, does not aid them for there it was held at page 459: “ The erection of the house and fence without an opening on the east gives no indication of an intent to abandon the easement. It indicates no more than that the owner of 143 did not use the alley. It is evidence of non-user and nothing more.”
As for the defendants’ contention that the use of the easement here involved was enlarged and extended because three different owners now claim to be entitled to its enjoyment, the short answer is that it was a matter of record that the agreement creating the easement was to run with the land, and the common grantors, who then owned all of the land benefited by the easement, set up in the deeds to Davis and Allen which were recorded the same day as the agreement of easement, an additional 11-foot right of way on the westerly boundary of the lots conveyed so that Davis and Allen had a continuous 11-foot easement out to Little Neck Parkway. The defendants, also grantees through mesne conveyances from the common grantors, took title with notice that the plaintiffs ’ property was connected with the ease^ ment or right of way created by the March 26, 1949 agreement, and that it was then owned by three different owners, Allen, Davis and Hayes, who became the grantees of part of the property originally conveyed to Davis. In any event, defendants in their counterclaim do not seek injunctive relief restraining the claimed excessive use of the easement.
*769 Finally, the defendants’ argument that they “ cannot be compelled to maintain the driveway, but [the] dominant owner must do so ” has no bearing- upon the disposition of this case. That question is not now before the court. Common-law principles seem to indicate, however, that absent an express agreement, the persons benefited must share ratably in the cost of the maintenance and repair of the right of way over defendants’ land. (Greenfarb v. R. S. K. Realty Corp., 256 N. Y. 130, 134-135.) The “ right to repair is incident to the easement, and without it the way might become useless and of no benefit. Having the easement, carries with it the right to make necessary repairs * * *. In fact, the grantee of a private way is bound to keep it in repair” (McMillan v. Cronin, 75 N. Y. 474, 477). The Appellate Division of the Second Department put it this way in Streuber v. Meacham & Son (163 App. Div. 574, 575): ‘1 Defendant as the owner of the servient property had no active obligation. The duties on the servient owner are negative — to refrain from interfering with the user granted. The owner of the soil is not bound to repair such a road, as that duty belongs to the party who has the benefit.”
Judgment is accordingly granted in favor of the plaintiffs as prayed for in the complaint and the counterclaim is dismissed on the merits. There will be no costs. Settle judgment.