275 So.2d 521 (1973)
TRUSTEES OF TUFTS COLLEGE, Appellant,
v.
TRIPLE R. RANCH, INC., Appellee.
COMPASS ROSE CORPORATION, Appellant,
v.
TRIPLE R. RANCH, INC., Appellee.
TRIPLE R. RANCH, INC., Appellant,
v.
COMPASS ROSE CORPORATION, and Trustees of Tufts College, Appellee.
Nos. 41535, 41534 and 41534-A.
Supreme Court of Florida.
March 21, 1973.
*522 Max F. Morris of Helliwell, Melrose & DeWolf, Orlando, for Trustees of Tufts College, appellant-appellee.
A. Duane Bergstrom and W. Scott Gabrielson, of Rush, Marshall, Bergstrom & Robison, Orlando, for Compass Rose Corp., appellant-appellee.
Russell W. Layton, Orlando, for Triple R. Ranch, Inc., appellee-appellant.
Thomas A. Clark, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for Humble Oil & Refining Co., amicus curiae.
ROBERTS, Justice.
This cause reaches us on two interlocutory appeals and a certificate of the trial court which poses as dispositive of the litigation two questions raising the constitutionality of Florida Statute, Section 704.05, F.S.A. and, if constitutional, whether it operates retrospectively or prospectively.
By warranty deed dated December 8, 1943, recorded on December 23, 1943, in Deed Book 107, page 564, Public Records of Osceola County, Florida, appellant, Trustees of Tufts College, conveyed to Irlo Bronson and Flora B. Bronson, his wife, the fee simple title in and to certain described real property, together with the right to use said property for agriculture, horticulture, grazing, working trees for turpentine, cutting and removing timber and wood, and such other uses as the surface may be put to. The deed contained the following language and reservations;
"... subject, however, to the rights of Sun Oil Company under its *523 lease hereinafter mentioned and those of the grant or or any future lessee or vendee of the minerals, oil, petroleum products and gas under the surface as saved, reserved and excepted in the following paragraph, and the rights of others to which this conveyance is made subject, saving, reserving and excepting out of the grant herein made all the minerals, oil, petroleum products and gas under the surface of the said premises with power for the Grantor, its successors and assigns, to take all usual, necessary or convenient means for working, getting, laying up, dressing, making merchantable, taking away and marketing said minerals, oil, petroleum products and gas and for the said purposes and for any other purposes in connection with the said reservations and exceptions, to make and repair tunnels and sewers and to lay, maintain, and repair pipes to convey water, oil, petroleum products and gas to and from any manufactory, tank, storage building or receptacle, or other building or structure; to investigate, explore, prospect, drill and mine for and produce oil, gas and all other minerals; to erect and maintain telephone and telegraph lines, power stations and other structures thereon convenient for producing, saving, taking care of, treating, storing, transporting and manufacturing said minerals, oil, petroleum products and gas and the housing of employees, and further saving and reserving the right to use water and gas from the said lands in operating the same and rights of ways over the same for ingress and egress and to go from place to place on the said premises for the purpose of such investigating, exploring, prospecting, drilling and mining for and producing oil, petroleum products, gas and all other minerals, on foot, with or without vehicles and animals, and to construct, erect and maintain and use all such railroads, tramroads and other roads, privileges and culverts as may, in the judgment of the Grantor, its successors or assigns, be necessary or convenient to carry on the operation and use to the fullest the reservations and exceptions herein contained; to remove, either during the term of such operation, or any of them, or at any time thereafter, any property, buildings or improvements placed on or in the said lands by the Grantor, its successors or assigns."
The Bronsons conveyed the land by warranty deed dated August 31, 1944, and recorded December 2, 1944, to H.E. Brown, subject to all of the exceptions, conditions and reservations as set forth in the deed from the College. H.E. Brown, joined by his wife, conveyed to Jerry Brown and Buster Brown by warranty deed dated December 4, 1956, recorded December 15, 1956, who in turn conveyed by warranty deed dated December 30, 1963, to James Rooney. By quitclaim deed dated January 29, 1964, recorded on the same date, Rooney conveyed, subject to the reservations, to Triple R. Ranch, Inc.
The Trustees of Tufts College by instrument dated December 28, 1965, recorded January 10, 1966, conveyed Paul Helliwell an undivided one-half interest in and to all of the minerals, oil, petroleum products, and gas in and under the surface of and which may be produced from said real property, together with 100% of all rights of ingress, egress, exploration and each and every other right or privilege of any sort or nature reserved and excepted to the Trustees of Tufts College by virtue of the warranty deed from the Trustees to the Bronsons. Helliwell subsequently by instrument dated October 23, 1967, conveyed to Compass Rose Corporation all of the right, title and interest to mineral rights and other privileges conveyed by Trustees of Tufts College to Helliwell. The controversy in the instant action arose from the enactment of Section 704.05, Florida Statutes, F.S.A.
During the 1970 Legislative session, the Florida Legislature promulgated Chapter 70-100, now carried forward as Section 704.05, Florida Statutes, F.S.A. the construction *524 and constitutionality vel non of which are presently at issue before us in this cause. F.S. Section 704.05, F.S.A., which became effective October 1, 1970, provides:
"704.05 Easements and rights of entry. 
(1) The rights of entry, or of an easement, given or reserved in any conveyance or devise of realty, when given or reserved for the purpose of mining, drilling, exploring, or developing, shall be limited to a twenty (20) year period beginning with the recording of such conveyance or devise if such rights are not exercised during this twenty (20) year period.
(2) After the twenty (20) year period has expired, the owner of such property may file a suit in the circuit court of the county in which the property is located, and upon such procedure as used in quieting title the court shall, upon proof of the nonexercise of such rights and the expiration of the twenty (20) year limitation, enter a decree forever clearing and confirming the removal of said rights from the title to the said real estate."
On November 30, 1970, Triple R. Ranch filed suit in Osceola County Circuit Court against Tufts College and Compass Rose alleging that by virtue of Section 704.05, it, the appellee, was entitled to the entry of a decree forever clearing and confirming the removal of the aforesaid rights of entry and easements as encumbrances on their title. In opposition, the appellants contended that the statute in question was unconstitutional, and appellants moved for dismissal and for judgment on the pleadings, which motions were denied. Subsequently, appellants separately sought interlocutory appeals to this Court.
1. Should Section 704.05 be applied retrospectively?
2. If applicable, is Section 704.05 constitutional under the Florida and United States Constitutions?
All three matters are consolidated here for disposition. This Court has jurisdiction of this cause, Article V, Section 3(b)(1), Florida Constitution 1973, F.S.A., F.A.R. 4.6, 32 F.S.A. Jaworski v. The City of Opa-Locka, 149 So.2d 33 (Fla. 1963).
If Section 704.05, Florida Statutes, F.S.A., is not to be applied retroactively then it will be unnecessary for us to resolve the second question since the statute will not be applicable to the facts of the instant case.
We find that the statute in question should not have retrospective application.
Historically, courts have indulged in the presumption that the Legislature intended a statute to have prospective effect only. The bias against retroactive legislation is deeply rooted in the Anglo-American law.[1] Coke established the maxim, "Nova constitutio furturis forman imponere debet non praeteritas". (A new state of law ought to affect the future, not the past). Blackstone wrote that it was a matter of justice that statutes should operate in futuro.[2] A statute will be construed as prospective only unless the intention of the Legislature to give it a retroactive effect is expressed in language to clear and explicit to admit of reasonable doubt.[3] This Court in In *525 Re Seven Barrels of Wine, 79 Fla. 1, 83 So. 627, 631, 632 (1920), set out the following vitally important principle:
"A statute is not to be given a retrospective effect unless its terms show clearly that such an effect was intended [citations omitted]."
"The rule that statutes are not to be construed retrospectively unless such construction was plainly intended by the Legislature applies with peculiar force to those statutes the retrospective operation of which would impair or destroy vested rights [citations omitted]."
......
"A statute should not, by construction, be given a retrospective effect when it would jeopardize the validity of the statute, or when it would make its application conflict with organic law. See McCarthy v. Havis, supra; St. Louis & S.F.R. Co. v. Cross (C.C.) 171 F. 480; Graves v. Dunlap, 87 Wash. 648, 152 P. 532, L.R.A. 1916C, 338, Ann.Cas. 1917B, 944."
"A statute should not be so construed or applied as to make it conflict with organic law, when a construction or application conformable to the Constitution is practicable and the legislative intent is not thereby thwarted, since it must be assumed that the Legislature contemplated the enactment of a law that would conform to the Constitution, and that it would be applied to classes of cases in which it may be validly enforced. See Singer Sewing Machine Co. v. Attorney General of State of Alabama, 233 U.S. 304, 34 Sup.Ct. 493, 58 L.Ed. 974; United States Fidelity & Guaranty Co. v. United States, for Use and Benefit of Struthers Wells Co., 209 U.S. 306, 28 Sup.Ct. 537, 52 L.Ed. 804." supra 79 Fla. 1, at 632 of 83 So.
......
"The provisions of the federal and state Constitutions securing defined property rights against invasion by state authority are limitations upon the lawmaking power of the Legislature, as well as upon the powers of the other departments of the state government; and property not harmful in itself, that is legally acquired as such by persons for lawful purposes, and not used, or designed to be used, for, or in connection with, or in furtherance of, an unlawful act or purpose, cannot legally be destroyed by the authority of a statute that is enacted subsequent to the lawful acquisition of the property, when such destruction is not expedient to conserve the rights of others or of the public welfare. The police power of the state is not absolute. It is subject to controlling provisions of the federal Constitution." supra, 79 Fla. 1, at 631 of 83 So.
With regard to the validity of retrospective legislation, this Court cited in McCord v. Smith, 43 So.2d 704 (Fla. 1949):
"A retrospective provision of a legislative act is not necessarily invalid. It is so only in those cases wherein vested rights are adversely affected or destroyed or when a new obligation or duty is created or imposed, or an additional disability is established, in connection with transactions or considerations previously had or expiated."
We emphasize the language in In Re Seven Barrels, supra, that a statute should not be given retrospective effect when it jeopardizes the validity of the statute.
The interest involved in the instant case which would be divested by the retrospective application of Section 704.05 is a valuable property interest. When the surface estate and the mineral estate are severed, they remain independent. Possession *526 of one does not carry with it possession of the other. In P & N Investment Corporation v. Florida Ranchettes, Inc., 220 So.2d 451 (Fla.App. 1969), the District Court of Appeal, First District, determined that when the surface estate is severed from the mineral estate, the mineral estate is dominant and as such its owner has the right of ingress and egress to explore, locate and remove minerals.
Our Legislature has also recognized that severed mineral rights constitute a valuable vested property interest. Section 193.481(1), Florida Statutes, F.S.A., provides in pertinent part:
"(1) Whenever the mineral, oil, gas, and other subsurface rights in or to real property in this state shall have been sold or otherwise transferred by the owner of such real property, or retained or acquired through reservation or otherwise, such subsurface rights shall be taken and treated as an interest in real property subject to taxation separate and apart from the fee or ownership of the fee or other interest in the fee. Such mineral, oil, gas and other subsurface rights, when separated from the fee or other interest in the fee, shall be subject to separate taxation. Such taxation shall be against such subsurface interest and not against the owner or owners thereof or against separate interests or rights in or to such subsurface rights."
That a right of entry or perpetual easement is a property right is clearly stated in Glessner v. Duval County, 203 So.2d 330, 332, wherein the Court held:
"Section 12 of the Declaration of Rights in the Florida Constitution, F.S.A. provides that `private property [may not] be taken without just compensation. * * *' That an easement constitutes property within the protection of the above constitutional provision has long been established in Florida."
Since valuable vested rights may be destroyed by retrospective application of Section 704.05, the rule that statutes will not be construed retroactively unless such construction was plainly and clearly intended by the Legislature applies with particular force to the construction of Section 704.05, Florida Statutes, F.S.A. There is no expression in this law which indicates that the Legislature intended for the statute to be applied retroactively. Every verb used in it is in the present or future tense. The statute applies to easements "when given or reserved" for the purposes of mining or developing and requires that they "shall be limited to a twenty year period beginning with the recording of such conveyances if such rights are not exercised during this twenty year period". The statute may not be relied upon until "after the twenty year period has expired".
The critical distinction between the Marketable Record Title Act and the statute in question is that under the former the holder of the right by mere expression may continue it. Section 704.05 contains no savings clause as is contained in the Marketable Record Title Act, Chapter 712, Florida Statutes, also Chapter 63-133, Laws of Florida 1963, whereby one affected could merely refile his claim to preserve it. Section 704.05, the law here involved, provides no opportunity for those in a similar circumstance to appellees to save their rights from forfeiture, or in other words, no savings clause which would provide a method for owners of easements in connection with mineral rights to effectively preserve their property rights. If Section 704.05, Florida Statutes, F.S.A., should be applied retroactively, it would give the affected persons no opportunity to avoid the consequences thereof by rearranging their affairs.
The language employed by the Legislature in the Marketable Record Title Act, Chapter 712, Florida Statutes, is substantially dissimilar from the wording in Section 704.05, and did indeed lend itself to a construction by the courts of retroactive application. Marshall v. Hollywood, Inc., 224 So.2d 743 (Fla.App. 1969), 236 So.2d 114 *527 (Fla. 1970). The intent of the Legislature that the Marketable Record Title Act should affect past as well as present and future transactions was made clear by the language employed therein. Section 712.02, Fla. Stat., F.S.A., provides:
"Marketable record title.  Any person having the legal capacity to own land in this state, who, alone or together with his predecessors in title, has been vested with any estate in land of record for thirty years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in § 712.03. A person shall have a marketable record title when the public records disclosed a title transaction affecting the title to the land which has been of record for not less than thirty years purporting to create such estate either in:
(1) The person claiming such estate; or
(2) Some other person from whom, by one or more title transactions, such estate has passed to the person claiming such estate, with nothing appearing of record, in either case, purporting to divest such claimant of the estate claimed." (emphasis supplied)
Section 712, Florida Statutes, includes savings provisions whereby affected persons may protect their interests, and says:
"712.05 Effect of filing notice.  (1) Any person claiming an interest in land may preserve and protect the same from extinguishment by the operation of this act by filing for record, during the thirty year period immediately following the effective date of the root of title, a notice, in writing, in accordance with the provisions hereof, which notice shall have the effect of so preserving such claim of right for a period of not longer than thirty years after filing the same unless again filed as required herein. No disability or lack of knowledge of any kind on the part of anyone shall delay the commencement of or suspend the running of said thirty year period. Such notice may be filed for record by the claimant or by any other person acting on behalf of any claimant who is:
(a) Under a disability,
(b) Unable to assert a claim on his behalf, or
(c) One of a class, but whose identity cannot be established or is uncertain at the time of filing such notice of claim for record.
(2) It shall not be necessary for the owner of the marketable record title, as herein defined, to file a notice to protect his marketable record title."
and Section 712.09 states:
"Extension of thirty year period.  If the thirty year period for filing notice under § 712.05 shall have expired prior to July 1, 1965, such period shall be extended to July 1, 1965."
In Biltmore Village v. Royal, 71 So.2d 727 (Fla. 1954), this Court invalidated the retroactive portion of Section 689.18, Florida Statute, F.S.A., which attempted to place a twenty-one year limitation on reverter rights and interests. Involved therein was a 1951 legislative enactment, Chapter 26927, Laws of Florida, cancelling all reverter provisions in deeds or plats in effect for more than twenty-one years. The act imposed a limitation on such reverters and gave the holder one year in which to enforce his right under specified conditions named in the act. Holding the act to be void and unconstitutional as to the rights of the appellant and those in a like situation, this Court recited in Biltmore Village v. Royal, supra, at 728-729,
"In Sturges v. Crowinshield, [17 U.S. 122], 4 Wheat. 122, 197, 4 L.Ed. 529 and in Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481, 1590, the Supreme Court of the United States very clearly pointed out the law governing the obligation of contracts. The covenants *528 in question were placed in the deeds for the benefit of the parties and the reverter covenant set out ready means of enforcement for the benefit of each and every owner. Section 2 of Chapter 26927 cancelled the reverter provisions and is condemned by the quoted decisions.
... of the said act which provides that the holder of a possibility of reverter may have one year from the effective date of the act to institute suit in a court of competent jurisdiction to establish or enforce such right. The trouble with such a savings clause is that it arbitrarily cuts off the right in one year unless suit is brought to enforce it. Such a saving provision affords no remedy to those situated like appellant, where breach of the covenant has not accrued, so as to actuate the enforcement of the right of reverter."
Under the rules of statutory interpretation established by this Court, Section 704.05, must be interpreted as having only prospective operation. Thus, its provisions are not applicable to the facts in the instant case, and the suit to quiet title should have been dismissed.
In view of the foregoing disposition of the cause we should not reach the question of the constitutionality vel non of the statute if applied prospectively.
However, we feel compelled to point out merely by obiter dicta that this statutory provision would have been more acceptable had it provided for a savings clause setting out a reasonable time and reasonable method by which the holders of such rights as are involved herein could reassert and refile their claims of reservation with the clerk of the circuit court at which time the limitation provision in the statute would begin to run over again.
Accordingly the Orders of the trial court denying appellant's, Trustees of Tuft's College, Motion to Dismiss and appellant's, Compass Rose Corporation, Motion for Judgment on the pleadings are hereby reversed. The first question propounded and certified to this Court by the circuit court is answered in the negative. This cause is remanded to the trial court with directions to dismiss appellee's complaint against appellant's.
It is so ordered.
CARLTON, C.J., DEKLE, J., and MELVIN, Circuit Judge, concur.
ERVIN, J., dissents with opinion.
BOYD, J., dissents and agrees with ERVIN, J.
ERVIN, Justice (dissenting):
We have before us in these consolidated interlocutory appeals the following questions certified to us from the Circuit Court of Osceola County:
1. Should Section 704.05, Florida Statutes, F.S.A., be applied retrospectively?
2. If applicable, is Section 704.05, Florida Statutes, constitutional under the Florida and United States constitutions?
The section, which became effective October 1, 1970, provides:
"(1) The rights of entry, or of an easement, given or reserved in any conveyance or devise of realty, when given or reserved for the purpose of mining, drilling, exploring, or developing, shall be limited to a twenty (20) year period beginning with the recording of such conveyance or devise if such rights are not exercised during this twenty (20) year period.
"(2) After the twenty (20) year period has expired, the owner of such property may file a suit in the circuit court of the county in which the property is located, *529 and upon such procedure as used in quieting title the court shall, upon proof of the nonexercise of such rights and the expiration of the twenty (20) year limitation, enter a decree forever clearing and confirming the removal of said rights from the title to the said real estate."
The instant action arose out of a series of conveyances commencing in 1943. In that year co-appellant Tufts College conveyed to Irlo and Flora Bronson fee simple title in certain lands in Osceola County, reserving, however, mineral rights and all easements and other rights necessary to obtain minerals. Tufts later conveyed one half of its subsurface rights and all of its rights of entry and easement to co-appellant Compass Rose. The Bronsons subsequently conveyed their fee simple title to the surface land to appellee, Triple R. Ranch, Inc.
In 1971 Triple R. Ranch filed suit in the Osceola County Circuit Court against Tufts College and Compass Rose, alleging the easements and rights of entry were never exercised and should be removed under the authority of Section 704.05, Florida Statutes, F.S.A. Tufts and Compass Rose filed motions to dismiss on the ground the section is unconstitutional. The motions were denied, and they filed this interlocutory appeal. Shortly thereafter, the trial court certified its questions. We have jurisdiction. Art. V, Section 4(2), Florida Constitution.
The first question is whether the Legislature intended for Section 704.05, Florida Statutes, F.S.A., to be applied retrospectively to extinguish unused easements reserved prior to the effective date of the Act. If such retrospective application was not intended, the section is not applicable to this cause and we need not consider the issue of its constitutionality.
For a statute to be applied retroactively, "its terms [must] show clearly that such an effect was intended." In re Seven Barrels of Wine, 1920, 79 Fla. 1, 83 So. 627, 632. That the Legislature did intend retroactive application of Section 704.05 is obvious when that section is compared with other Florida statutes. The section clearly provides that rights of entry and easements "reserved for the purpose of mining, drilling, exploring, or developing, shall be limited to a twenty (20) year period beginning with the recording of such conveyance or devise." (Emphasis supplied.) This language is virtually identical to that used in Section 712.02[1] of "The Marketable Record Titles to Real Property Act" which has been given retroactive application. Marshall v. Hollywood, Inc., Fla.App. 1969, 224 So.2d 743, writ discharged, Fla. 1970, 236 So.2d 114. On the other hand, in Sections 695.11[2] and 695.24,[3] for example, the *530 Legislature clearly indicated retroactive application was inappropriate by stating the sections were not applicable to recordings made prior to the statutes' effective dates. It seems clear that had the Legislature intended that Section 704.05 be prospective only, it would have specifically provided that the section was applicable solely to reservations made after October 1, 1970. Instead, the Legislature indicated its retrospective intent by stating without qualification that the section is applicable to all unused easements that are at least twenty years old. The first question, therefore, should be answered in the affirmative.
The second question, i.e., whether a retroactive application of Section 704.05 is constitutional, is the primary issue in this cause. After careful study I think it, too, demands an affirmative answer, subject to an equitable grace period as hereinafter indicated.
The constitutions of the United States and of Florida do not expressly prohibit the enactment of retroactive laws. Board of Comr's v. Forbes Pioneer Boat Line, 1920, 80 Fla. 252, 86 So. 199, 202. Since they are not per se unconstitutional in Florida, therefore, retroactive statutes are unconstitutional in this state only if they violate the clauses in the Florida and United States constitutions prohibiting the enactment of ex post facto laws, laws impairing contracts, and laws denying due process. Board of Com'rs v. Forbes Pioneer Boat Line, supra; J. Scurlock, Retroactive Legislation Affecting Interests in Land, 1953; Smead, "The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence, 1936, 20 Minn.L.Rev. 775; Smith, "Retroactive Laws and Vested Rights," 1927, 5 Tex.L.Rev. 231.
Appellants contend a retroactive application of Section 704.05 will both unconstitutionally impair the obligation of contracts and deny due process.[4] It will do neither.
According to the Supreme Court of the United States:
"... it is settled that neither the `contract' clause nor the `due process' *531 clause has the effect of overriding the power of the State to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise. [citations omitted] And the enforcement of uncompensated obedience to a regulation established under this power for the public health or safety is not an unconstitutional taking of property without compensation or without due process of law. [citations omitted]" Atlantic Coast Line R.R. Co. v. City of Goldsboro, 1914, 232 U.S. 548, 558, 34 S.Ct. 364, 368, 58 L.Ed. 721.
Section 704.05, Florida Statutes, F.S.A., therefore, should be held constitutional if it is a reasonable and appropriate exercise of the State of Florida's police power. Mahood v. Bessemer Properties, 1944, 154 Fla. 710, 18 So.2d 775; Home Bldg. & Loan Ass'n v. Blaisdell, 1934, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413; Atlantic Coast Line R.R. Co. v. City of Goldsboro, supra.
The police power enables states to legislate where necessary to preserve the public's health, welfare, morals, safety, and economic interests. Blaisdell, supra; Aigler, "Constitutionality of Marketable Title Acts," 1951, 50 Mich.L.Rev. 185. It has been called:
"one of the most essential powers of government,  one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. A vested interest cannot be asserted against it because of conditions once obtaining. Chicago & Alton R.R. v. Tranbarger, 238 U.S. 67, 78, 35 S.Ct. 678, 59 L.Ed. 204. To so hold would preclude development and fix a city forever in its primitive conditions. There must be progress, and if in its march private interests are in the way they must yield to the good of the community." Hadacheck v. Sebastian, 1915, 239 U.S. 394, 410, 36 S.Ct. 143, 145, 60 L.Ed. 348.
That Section 704.05 was enacted pursuant to the police power vested in the State of Florida is clear. This legislation is vital if this state is to achieve two major goals: optimum utilization, and free alienation, of land.
Lands encumbered with easements reserved for the purpose of obtaining subsurface minerals are rendered dubious as building sites. Not only will potential contractors hesitate to build on such land, but also financing is often unobtainable because of the possibility of the eventual exercise of the easements. With the growing land shortages and population expansion in this state, we cannot afford to have large areas of land usable primarily for mining, etc., purposes simply because they are so encumbered.
Furthermore, these easements prevent surface owners from conveying marketable title. Free alienability of land is one of the basic precepts of Anglo-American jurisprudence; without it there is "economic stagnation." J. Morris and W. Leach, The Rule Against Perpetuities 14 (1962). Courts in this nation recognize that "the best interest of society is served by promoting the circulation of property in commerce." Kuntz, "The Rule Against Perpetuities and Mineral Interests," 1955, 8 Okla.L.Rev. 183. This is the basic policy behind the Rule Against Perpetuities, Kuntz, supra, as well as marketable title acts, Scurlock, supra, at 81-82.
Twelve years ago it was said that:
"Since the Supreme Court of the United States has sustained the constitutionality of rent legislation, mortgage moratorium statutes, zoning laws, and many other kinds of regulatory statutes having a dramatic impact upon property, we may *532 confidently expect that it will also sustain any reasonable legislation having as its objective the marketability of land titles and that all enlightened state courts will do likewise." L. Simes and C. Taylor, The Improvement of Conveyancing By Legislation 255 (1960).
State courts are holding constitutional their marketable title acts. P. Basye, Clearing Land Titles (2d ed. 1970). While not ruling specifically on the question, this Court has assumed Florida's Marketable Title Act, Chapter 712, Florida Statutes, F.S.A., to be constitutional. Marshall v. Hollywood, Inc., supra, Fla., 236 So.2d at 118. In addition, we have previously held constitutional other legislation removing interests in land. H.K.L. Realty Corp. v. Kirtley, Fla. 1954, 74 So.2d 876; Basye, Clearing Land Titles, supra, at Section 87.
The primary object of the Legislature in enacting F.S. section 704.05 F.S.A. was to provide a twenty-year period of limitation to operate both presently or mediately as to the termination of mineral or mining interests. It set a time period or standard that it considered reasonable and appropriate to mark the point when a court of equity in a suit to quiet title could assume that the rights of entry and easement to mine, drill, explore, etc., for minerals, etc., in certain realty stood extinguished by reason of abandonment, non-user or adverse possession.
There are many decisions in our jurisdiction and in others holding that after elapse of a sufficient period of time certain rights in realty will be deemed by courts of equity to be extinguished by abandonment, non-user, non-exercise or adverse possession, etc., without there being prescribed therefor any specific statutory period of limitation. It is, of course, quite apparent the object of Section 704.05 is not to revive easement or entry rights which stand equitably extinguished without the statute's benefit.
Attention is called to the evils or problems which it is obvious the Legislature sought to remedy or rectify by the enactment of Section 704.05 and of which this Court can take judicial notice.
As well as does the Legislature, this Court knows what is common knowledge concerning the subject of long-existing mining and mineral grants, easements and leases which unquestionably limit the present or potential full use and enjoyment of surface ownerships. We can take notice of Ch. 6159, Acts of 1911, brought forward in Section 1771, Comp.Gen.Laws 1927, and F.S. Section 270.11, F.S.A., that required the reserving from all sales of public lands by the Trustees of the Internal Improvement Fund and the State Board of Education of a three-fourths state interest in phosphate, minerals, and metals and of a one-half interest in petroleum, in, on, or under such lands with the privilege to mine and develop the same. Mineral and mining rights in tax forfeited lands (e.g., Ch. 18296, Laws of Florida 1937, Murphy Act) have also been the subject of state reservation. It is common knowledge that the State through its agencies has either conveyed or leased or reserved mining or mineral rights to thousands of separate parcels of lands, the surface of which is in private ownership. The Trustees of the Internal Improvement Fund have long been authorized to sell or lease phosphate, mineral or metal rights on or under any state lands and until recent years have proceeded to do so in great volume. Ch. 9289, Acts 1923; Ch. 9315, Acts 1923; Ch. 13670, 1929, brought forward in F.S. Section 253.45, F.S.A., authorized the Trustees of the Internal Improvement Fund and the State Board of Education to sell leasehold estates for the purpose of the production therefrom of oil and gas. Similar authority is contained in Ch. 22824, Acts 1945; F.S. Section 253.51, F.S.A., and former F.S. Section 270.28, F.S.A. Among the best known of the state oil and gas leases are those originally executed by the Trustees to Arnold Explorations, Inc., and later transferred by it to Coastal Petroleum Company, in the 1940's, during the *533 Holland and Caldwell administrations, which covered thousands of acres of submerged lands owned by the State in the Gulf of Mexico and its estuaries, and in certain river and lake bottoms of several of the large rivers and lakes in Florida. These subsurface rights in navigable waters have been continuing problems, either presently or potentially to the free use and the enjoyment by riparian owners and the public generally of sovereignty areas, along shores and in adjacent navigable waters, as well as posing potential problems to the State in its later programs to protect its navigable waters and coastal areas from pollution despoilation.
For a judicial history of the State's grants of its oil and gas and other mineral subsurface rights (which in retrospect many have considered were excessive and improvident),[5] see such cases as Watson v. Holland, Fla., 20 So.2d 388, 49 A.L.R.2d 1396, and Collins v. Coastal Petroleum, 155 Fla. 342, 118 So.2d 796. It will be noted from the last case cited that under the Arnold Explorations, Inc. lease (transferred to Coastal Petroleum Company) it was held the subject oil and gas leases involve not only the production of oil and gas through oil pipe drilling methods, but that these leases included other minerals which may be taken through "strip-mining, open-pit mining or dredging" of the surface. See also, Attorney General Opinion 061-50, March 27, 1961, for further information relating to the subject of offshore oil and gas leases.
It is well known that phosphate mining usually results in permanent destruction of the natural surface of lands. Oil spills are devastating menaces to marine life.
It is little wonder in view of the excessive leasing of underlying minerals in state lands and sovereignty areas by State officials in earlier years that the Legislature in 1970 passed Section 704.05 in an effort to require either early exercise of the rights granted or in the alternative that those rights be subject to removal as clouds because of non-user or abandonment in order that there might be an end put to the nuisance potential of these long-existing but unexercised oil and gas leases.
In passing, it seems appropriate to note that as to the State's reserved rights in minerals which have not been leased or otherwise transferred by the State into the private sector, Section 704.05 should be held to extinguish any of such reserved rights which were reserved in instruments of record for twenty years or more. This is so because the Legislature has the power to grant by statute any state lands or surrender or extinguish subsurface rights therein except where constitutional limitations preclude. There is no prohibition in the Constitution against the Legislature extinguishing or surrendering the State's reserved mineral rights in lands the surface of which it has already sold or granted to others. Compare State ex rel. Buford v. Tampa, 1924, 88 Fla. 196, 102 So. 336; State ex rel. Ellis v. Gerbing, 56 Fla. 603, 47 So. 353, and Watson v. Holland, 1944, 155 Fla. 342, 20 So.2d 388, and generally 26 Fla.Jur., Public Lands, §§ 56 and 57.
In addition to the State originated conveyances and reservations of petroleum and mineral rights, the Court knows there are numerous private grants and reservations of mining and mineral rights contained in recorded instruments that have cluttered and clouded private land titles for long periods of time and consequently impair or potentially impair the full enjoyment and use of the surface of such private lands. A great many of them are in a dormant, unexercised state, with relatively little prospect of ever being exercised. Nevertheless, they have a nuisance value and ownerships of many of them have resulted in the surface owners being put to *534 considerable expense in securing quit-claims or disclaimers or undertaking quiet title litigation to remove them as clouds on title. The large majority of these instruments by their terms extend perpetually, forever clouding titles and posing a threat to the full enjoyment of surface ownerships throughout future years.
It seems reasonable from the conditions noted that the Legislature by F.S. Section 704.05, F.S.A. sought to afford surface owners (and the public generally as to sovereignty areas) the right to either have these old encumbering record mineral instruments equitably cancelled  or at least to place the surface owners in a position to require the owners of the underlying mineral interests, if they wished to continue such rights, to negotiate with surface owners on the basis of current conditions, for such things as: revisions affording better protection of surface rights, or to require modern-day royalty values for minerals, or adjustment of taxes, etc.
The Legislature, by the enactment of Section 704.05, no doubt took into consideration the fact that most existing long-term oil and gas and other mineral rights instruments contained no built-in incentives or prods for the early exercise of such rights by their owners or the surrender of same if there was no intention to ever exercise such rights. One of the effects of Section 704.05 was to speed up the exercise of such rights or their surrender. Thus the chief object of the statute is to restore a degree of environmental equilibrium between surface and subsurface rights; to afford surface owners and the state itself power to balance and manage to a degree the hitherto overriding rights of subsurface owners. The statute is clearly a conservation measure designed to promote ecological reform.
At this point I reflect the result of my research as to pertinent authorities in other jurisdictions which support the answers we give to the certified questions.
Under early code provisions in Louisiana, the nonuser for a period of ten years of the right to take minerals, oil, and gas from servient land extinguished the rights. Sample v. Louisiana Oil Refining Corp., 1927, 162 La. 941, 111 So. 336; Louisiana Petroleum Co. v. Broussard, 1931, 172 La. 613, 135 So. 1; Goldsmith v. McCoy, 1938, 190 La. 320, 182 So. 519; Lynn v. Harrington, 1939, 193 La. 877, 192 So. 517; Hightower v. Maritzky, 1940, 194 La. 998, 195 So. 518; Martel v. A. Veeder Co., 1942, 199 La. 423, 6 So.2d 335; McDonald v. Richard, 1943, 203 La. 155, 13 So.2d 712.
Where an alleyway had been laid off in partition proceedings to run through lots of the parties, but had never been constructed or used, the Court held that after 20 years of occupation of the lots without reference to such right of way, a presumption of abandonment by nonuser arose. Hunter v. West, 1916, 172 N.C. 160, 90 S.E. 130.
An easement created by deed can be lost by nonuser for the statutory period of limitation, so that practically nonuser is simply another form of claim of adverse possession. Harrington v. Kessler, 247 Iowa 1106, 77 N.W.2d 633.
Under the doctrine of liberative prescription, since servitude is imposed only upon land, its expiration in 10 years for nonuse inures to benefit of landowners. Elkins v. Townsend, CA 5 La., 296 F.2d 172 (applying Louisiana law).
Nonuser for period of 20 years, under circumstances showing intention to abandon, extinguished easement. Allen v. Greenberg, 21 Misc.2d 763, 195 N.Y.S.2d 287. Compare Bryant v. Lovett, Fla. 1967, 201 So.2d 720, 725.
Mineral rights may become extinguished by nonuser. Mays v. Hansbro, 222 La. 957, 64 So.2d 232.
Because the public policies behind F.S. Section 704.05, F.S.A. are virtually identical to those behind marketable title acts and *535 the Rule Against Perpetuities, it is logical to conclude the section constitutes an appropriate exercise of Florida's police power.
The only remaining question is whether in upholding Section 704.05 equity should judicially require a reasonable time of grace before the cancellation authority of the state takes effect absolutely. Equity courts have the power to ameliorate statutory or contractual hardships under certain exceptional conditions and circumstances where it appears reasonable to do so.
In doing so, the courts can save statutes from unconstitutional application, particularly where the hardship involved is retroactive in operation. In Terry v. Anderson, 1877, 95 U.S. 628, 632, 24 L.Ed. 365, the Supreme Court of the United States said, "This Court often decided that statutes of limitations affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect." The problem was avoided in Florida's Marketable Title Act which, in F.S. Section 712.09, F.S.A., afforded "two full years for all persons having interests in real property to become acquainted with the purpose and operation of the Act and take any steps which may be needed to protect their interests." Basye, supra, at Section 187.
This case is the original consideration by this Court of Section 704.05. Consequently, we have opportunity now to interpret and apply the statute in a way that will give it constitutional effect. It is our duty to save a statute from unconstitutionality if at all possible. Furthermore, we have equitable authority to relieve against hardship and in doing so save a statute from an invalidating application. Compare Adler-Built Industries v. Metropolitan Dade County, Fla., 231 So.2d 197; Riggs v. Palmer, 115 N.Y. 506, 22 N.E. 188; Beley v. Naphtaly, 169 U.S. 353, 18 S.Ct. 354, 42 L.Ed. 775; Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77. See 27 Am.Jur.2d 650, 651.
Nothing is considered more absolute and inviolate in law than a deed or conveyance granting property rights, yet reference by comparison to the case of Wilson Cypress v. Stevens, 1932, 106 Fla. 717, 143 So. 661, discloses a suit was brought in 1927 against the Cypress Company to cancel as a cloud on title a deed (A) executed in 1904 to all standing cypress timber trees with the irrevocable right and license to enter upon the land involved to remove the trees. The deed conveyed all estate, right, title and interest in the timber trees "to have and to hold said timber trees, rights, privileges and license ... unto the said party of the second part, and its successors and assigns ... forever." Another timber deed (B) executed the same year which was sought to be cancelled covered all standing cypress at the date of the deed, "with ... right of way, irrevocable ... upon said lands ... for the purpose of obtaining and using said timber for and during the period of ninety-nine years ... from ... date." (Emphasis supplied.) This Court there noted that cypress timber is of very slow growth, requiring more than a century for young trees to reach a size suitable for lumbering purposes. The Court reversed a final decree cancelling the deeds with directions "to the Court below to enter a decree fixing and allowing Wilson Cypress Company a further time of five years from the date of such decree in which to enter upon the lands and cut and remove all remaining timber to which it acquired title under timber deeds A and B." (Emphasis supplied.) This five-year delayed cancellation was ordered by the Court without benefit of a limitation statute because it was found justified by equitable considerations only.
Similarly, it is my view that in this case we may equitably avoid hardship and at the same time save the constitutionality of Section 704.05 by decreeing a reasonable extension or grace period softening the statute's retroactive application.
*536 With the foregoing principles of equity in mind with respect to retroactivity, I think we should direct that as to all instruments contemplated by F.S. Section 704.05, F.S.A., which have been of record twenty years or more as of the date of the decision herein, as well as those which will have been recorded for twenty years or more during the next five years, their owners should have five years from the date of the decision herein to exercise their rights under such instruments. As to all instruments contemplated by Section 704.05 which shall have been recorded for twenty years or more after the expiration of five years from the date of the decision herein, no grace or extension period should be afforded since the owners thereof would have had at least five years' notice of this decision.
Inasmuch as Section 704.05 by its terms provides for the enforcement in equity courts of the limitation therein upon the rights of entry or easement for mining, etc., purposes, such courts have reasonable powers to relieve against hardship by applying a five-year grace period against retroactive operation of the limitation as just above indicated.
It is my view that due judicial deference to the legislative branch and to the wisdom and policy of its enactment fully warrants the answers suggested above to the certified questions. The related evils and conditions inimical to the public welfare clearly indicate enlightened regulatory legislation is constitutionally justified to cope with changed conditions in a modern, growing, state.
Apparently even from the inconclusive language of the majority, it is their view Section 704.05 could have been given retroactive effect if the Legislature had chosen to provide a grace period therein similarly as in the Marketable Title Act. Perhaps amendatory legislation might correct the deficiency the majority appears to envision through the murk of archaic precedents.
BOYD, J., concurs.
NOTES
[1] Smead, The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence, 20 Minn.L.Rev. 775 (1936).
[2] Scurlock, Retroactive Legislation Affecting Interests in Land, 1953, p. 9.
[3] See McCarthy v. Havis, 23 Fla. 508, 2 So. 819 (1887), State ex rel. Hill v. Cone, 140 Fla. 1, 191 So. 50 (1939), Laney v. Board of Public Instruction for Orange County, 153 Fla. 728, 15 So.2d 748 (1944), State ex rel. Bayless v. Lee, 156 Fla. 494, 23 So.2d 575 (1945), Larson v. Independent Life & Acc. Insurance Co., 158 Fla. 623, 29 So.2d 448 (1947), State ex rel. Riverside Bank v. Green, 101 So.2d 805 (Fla. 1958), Indemnity Insurance Co. of North America v. Brooks-Fisher Insulating Co., 140 So.2d 613 (Fla.App. 1962), Schonfield v. City of Coral Gables, 174 So.2d 453, Fla.App., cert. disch., 183 So.2d 682, Fla., Heberle v. P.R.O. Liquidating Co., 186 So.2d 280 (Fla.App. 1966).
[1] 712.02 Marketable record title.  Any person having the legal capacity to own land in this state, who, alone or together with his predecessors in title, has been vested with any estate in land of record for thirty years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in § 712.03. A person shall have a marketable record title when the public records disclosed a title transaction affecting the title to the land which has been of record for not less than thirty years purporting to create such estate either in:

(1) The person claiming such estate; or
(2) Some other person from whom, by one or more title transactions, such estate has passed to the person claiming such estate, with nothing appearing of record, in either case, purporting to divest such claimant of the estate claimed. (Emphasis supplied.)
[2] 695.11 Instruments deemed to be recorded from time of filing.  All instruments which are authorized or required to be recorded in the office of the clerk of the circuit court of any county in the State of Florida, and which are to be recorded in the "Official Records" as provided for under § 28.222, and which are filed for recording on or after the effective date of this act, shall be deemed to have been officially accepted by the said officer, and officially recorded, at the time he affixed thereon the consecutive official register numbers required under § 28.222, and at such time shall be notice to all persons. The sequence of such official numbers shall determine the priority of recordation. An instrument bearing the lower number in the then current series of numbers shall have priority over any instrument bearing a higher number in the same series. (Emphasis supplied.)
[3] 695.24 Instruments required to reflect name and address of person by whom prepared. 

(1) No instrument by which the title to real estate or any interest in it or lien on it is conveyed, created, encumbered, assigned, or otherwise disposed of shall be recorded by the clerk of the circuit court unless the name and address of the natural person who prepared the instrument or under whose supervision it was prepared is printed, typewritten, or stamped on the face of it in a legible manner. An instrument complies with this section if it contains a statement in substantially the following form:
 "Prepared by
 ___________________, ________________."
 (name) (address)
(2) This section does not apply to any instrument executed before the effective date of this section, nor to the following:
(a) A decree, order, judgment, or writ of any court;
(b) An instrument executed or acknowledged outside of this state;
(c) A plat; or
(d) An instrument prepared or executed by any public officer except a notary public.
(3) The failure of the clerk of the circuit court to comply with the provisions of this section shall not impair the validity of the recordation or of the constructive notice imparted thereby.
(4) Recordation of all otherwise valid instruments made prior to April 28, 1971 without compliance with this section is hereby validated and all the instruments are declared to be record or constructive notice in the counties where they are recorded from the date of recordation. (Emphasis supplied.)
[4] Ex post facto legislation deals solely with criminal matters, Board of Com'rs of Everglades Drainage Dist. v. Forbes Pioneer Boat Line, supra, 86 So. at 201, and is not applicable to this cause.
[5] The leases to Arnold Explorations, Inc. were highly speculative grants to a "wildcatter," not a major oil company. The result has been the tying up of immense sovereignty areas with little exploration and no production of oil and gas.