**FLYING DIAMOND CORPORATION, Plaintiff and Appellant,**

v.

**Anthon RUST, Defendant and Respondent, Utah Mining Association, Amicus Curiae.**

**No. 14338.**

Supreme Court of Utah.

June 17, 1976.

---

Gayle F. McKeachnie, McKeachnie & Seager, Vernal, for plaintiff and appellant.

Robert C. Cummings and Gordon A. Madsen, Madsen, Cummings & Harris, Salt Lake City, for defendant and respondent.

Keith E. Taylor, James B. Lee and J. Brent Garfield, Parsons, Behle & Latimer, Salt Lake City, for amicus curiae.

CROCKETT, Justice:

Plaintiff, the Flying Diamond Corporation, lessee of oil and gas rights on the property of the defendants, Anthon and Ona Rust, sued to restrain them from interfering with the plaintiff's oil drilling operation. Defendants counterclaimed for damage to their land. Following a plenary trial, the court refused to grant the plain-

tiff's request for an injunction and awarded defendants $16,542 on their counterclaim. Plaintiff appeals, contending that as oil and gas lessee it is not liable for damages to the surface reasonably necessary to the extraction of oil and gas; that the damage was not to crops, as that term is used in the lease; and that the trial court erred in assessing damages.

In 1973 the plaintiff discussed with the defendants its plans to drill an oil well at a certain location on the land. Defendants requested plaintiff to build the access road in from the north, which would minimize damage and not interfere with irrigation of defendants' lands. Their discussions produced no agreement and the plaintiff proceeded to construct the road coming in from the east. The trial court found that it was not necessary to build the road from the east; that it could have come in from the north as defendants requested; and that the road as so constructed from the east caused damage to the defendants by the taking of the 5.88 acres and prevented the defendants from irrigating another 15 acres. Based upon testimony that similar land in the locality had sold for $1,400 per acre, and that plaintiff had offered the defendants $1,000 per acre, the trial court assessed damages at the rate of $900 per acre for the 5.88 acres, and at the rate of $750 per acre for diminishing the usefulness of the other 15 acres.

■ The general rule which is approved by all jurisdictions that have considered the matter is that the ownership (or rights of a lessee) of mineral rights in land is dominant over the rights of the owner of the fee to the extent reasonably necessary to extract the minerals therefrom.[1] This dominance is limited in that the mineral owner may exercise that right only as reasonably necessary for that purpose and consistent with allowing the fee owner the greatest possible use of his property consistent therewith. Such a conflict of interest was dealt with in the case of *Getty Oil Company v. Jones.*[2] Therein the court acknowledged the right of the lessee to extract oil notwithstanding surface damage; but also pointed out that where there is a reasonable and practical alternative which could be pursued to minimize damages to the fee holder, that should be done.

■ We subscribe to the foregoing as in harmony with the principle which we think is sound: that wherever there exist separate ownerships of interests in the same land, each should have the right to the use and enjoyment of his interest in the property to the highest degree possible not inconsistent with the rights of the other.[3] We do not mean to be understood as saying that such a lessee must use any possible alternative. But he is obliged to pursue one which is reasonable and practical under the circumstances. The evidence here justifies the trial court's view that there was such a reasonable alternative to the use of the 5.88 acres; and also, that that amount of land was rendered totally and permanently unusable for agricultural purposes by the defendants.

As to the 15 acres for which damages were awarded because the construction of plaintiff's road interfered with their irrigation, the plaintiff makes two contentions arising out of paragraph 10 of the lease. It states that: Lessee "shall pay for damage directly and immediately caused by its operations to growing crops theretofore planted on said land." Plaintiff argues that the only growth on the 15 acres was clover, alfalfa and natural grasses, all used for grazing, the same as existed at the time of the lease; and that therefore, any

1. 4 Summers, Oil & Gas, Sec. 652; 1 Williams & Meyers, Oil & Gas Law, Sec. 218.

2. 470 S.W.2d 618, 53 A.L.R.3d 1 (Tex.1971), see cases therein cited; see also *Diamond Shamrock Corp. v. Phillips*, 256 Ark. 886, 511 S.W.2d 160 (1974).

3. *North Union Canal Co. v. Newell*, Utah, 550 P.2d 178 (1976); *Stevens v. Bird-Jex Co.*, 81 Utah 355, 18 P.2d 292 (1933); 2 Thompson, Real Property, Easements, Sec. 426.

damage to them did not come within the language of "growing crops theretofore planted on said land."

The first part of this argument is that the road was constructed in the winter so there were no growing crops to be harmed. This argument is so specious that it needs no comment except to say that this would be true with practically all crops, which are mostly quiescent during the winter months in this latitude; and that if the plaintiff's argument was sound, one covenanting against such damage would only have to wait until winter to destroy crops with impunity.

■ The second aspect of plaintiff's argument is that the vegetation as recited above is indigenous to the area and therefore should not be considered as "crops theretofore planted" on said land. This may be true as to the grasses, but not to the clover and alfalfa. In any event, the contract should be construed in accordance with what reasonably appears to have been the intent of the parties in adopting the language of the lease. The evidence is that the forage referred to were the only crops growing or contemplated on that pasture land. We have heretofore held that the term "crops" encompasses the useful product of land whether sown or occurring naturally.[4] Consistent with the foregoing, if the provision of the lease is to have any practical meaning, it must have been as a protection against the crops intended to be grown on the land; and the trial court was justified in so concluding.

Plaintiff lastly contends that the trial court erred in assessing damages on a theory of depreciation. It cites *Frankfort Oil Company v. Abrams*,[5] where it was held that, absent a specific provision extending liability to cover the indirect loss of value to other lands of the defendant, damages could be had only for direct injury to defendant's property caused by its operations in extracting the oil or minerals. We see no reason to disagree with the holding of the *Frankfort* case and others like it,[6] which deny coverage for depreciation resulting to the landowner's other property by the exercise of the right to extract. But we do not see that this is inconsistent with the finding of the trial court and the judgment rendered herein. The terminology used is not controlling. Our interest is in the essential fact as to what was done. When viewed in that light, it is apparent that the trial court found that because of the placement and manner of construction of the plaintiff's road, preventing irrigation of 15 acres of the defendants' land, its usefulness and value were diminished to the extent of *$750* per acre. Applying the standard rule of indulging the presumptions of verity to the findings and judgment of the trial court, we are not persuaded that they should be disturbed.

Affirmed. Costs to defendants (respondents).

HENRIOD, C. J., and TUCKETT, ELLETT, and MAUGHAN, JJ., concur.

4. *Francis v. Roberts et al.*, 73 Utah 98, 272 P. 633 (1928) ; and see *Frankfort Oil Co. v. Abrams*, 159 Colo. 535, 413 P.2d 190 (1966).

5. Supra, note 4.

6. E. g., *O'Connor v. Great Lakes Pipe Line Co.*, 63 F.2d 523 (8th Cir. 1933) ; *Fulkerson v. Great Lakes Pipe Line Co.*, 335 Mo. 1058, 75 S.W.2d 844 (1934) ; *Pitsenbarger v. Northern Natural Gas Co.*, 198 F.Supp. 665 (S.D.Iowa 1961).