Carl N. **SMITH** and Dawna LaVerne **Smith, Plaintiffs and Appellants,**

v.

**LINMAR ENERGY CORPORATION,** a Delaware corporation, Defendant and Appellee.

No. 880661–CA.

Court of Appeals of Utah.

April 19, 1990.

Gordon A. Madsen, Robert C. Cummings (argued), Madsen & Cummings, Salt Lake City, for plaintiffs and appellants.

Robert W. Adkins (argued), Terry L. Christiansen, Adkins & Christiansen, P.C., Coalville, for defendant and appellee.

Before DAVIDSON, BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

Plaintiffs/appellants Carl N. Smith and Dawna LaVerne Smith ("Smiths") appeal from a money judgment in their favor. The Smiths claim the trial court incorrectly assessed the damages due them as a result of the defendant/appellee Linmar Energy Corporation's ("Linmar Energy") placement of an oil well, battery storage tank, and road on the Smiths' property pursuant to an oil and gas lease. We affirm.

The Smiths are owners of a fee interest in 20 acres of land located adjacent to the city limits of Altamont in Duchesne County. Linmar Energy is the lessee under an oil and gas lease covering this property. The Smiths' 20–acre tract, including the land now occupied by the well site, has been used exclusively for agricultural purposes. The Smiths' property is located in the Altamont–Bluebell oil field and is surrounded by numerous oil wells, some of which may be seen from the Smith property.

In 1983, Linmar Energy, pursuant to its lease, entered onto the southwest corner of the Smiths' 20–acre parcel to install an oil well along with an oil well battery and storage tanks. Linmar Energy also constructed an access road from the county road on the north to the well site. Linmar

Energy occupied 4.76 acres of the 20–acre parcel.

Linmar Energy considered several other alternative locations for the well site, but rejected the other sites based on geological and economic factors. Prior to construction of the well site, Linmar Energy's representative contacted Carl Smith and met him on the property. The record supports Linmar Energy's claim that Mr. Smith refused to provide any input regarding where on his land he would like the well drilled or the road constructed, though both parties agree that Mr. Smith did express a desire to have the well drilled on someone else's land.

In the fall of 1984, the Smiths filed an action in district court against Linmar Energy seeking to recover damages caused by the construction of the well site and access road. The case was tried without a jury on April 5 and 6, 1988. The trial court awarded the Smiths $16,065 in damages. The court valued the land based on its agricultural use, found that Linmar Energy's use of the 4.76–acre parcel was of such a nature and duration that it would be unusable for agricultural purposes in the near future, and credited Linmar Energy for the residual value of the property at the point in the future when Linmar Energy's use of the property would cease and the property would be restored and returned to the Smiths.

The Smiths appeal, claiming that the court erred (1) in failing to find that Linmar Energy's choice of a well site was unreasonable and arbitrary; (2) in failing to assess damages to the property based on its "highest and best use" which they claim was for residential purposes; (3) in failing to award the Smiths severance damages; (4) in failing to find that the tract taken had no residual value; and (5) in failing to award the Smiths prejudgment interest.

### PLACEMENT OF WELL SITE

 Initially, the Smiths contend that Linmar Energy acted unreasonably and arbitrarily in its placement of the road, well site, and battery storage tanks. In Utah, as a general matter, ownership of mineral rights in land is dominant over the rights of the owner of the fee title to the extent reasonably necessary to extract minerals. *Flying Diamond Corp. v. Rust*, 551 P.2d 509, 511 (Utah 1976). However, the rights of the mineral owner are qualified. The mineral owner must exercise his or her rights only as reasonably necessary, "and consistent with allowing the fee owner the greatest possible use of his property consistent therewith." *Id.* Where there is a reasonable and practical alternative to mitigate the damages to the fee owner, the lessee must pursue such a course of conduct. However, the lessee is not required to utilize any possible alternative, but only one that is both "reasonable and practical under the circumstances." *Id.*

██ The trial court found that Linmar Energy's selection of the well site and supporting improvements was "reasonable, practical and carried out in good faith." We will not set aside a trial court's finding of fact unless it is against the clear weight of the evidence or we otherwise reach a definite and firm conviction that a mistake has been made. *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376, 1377 (Utah 1987); *see also Ashton v. Ashton*, 733 P.2d 147, 150 (Utah 1987). We may regard a finding as clearly erroneous only if the finding is without adequate evidentiary support or is induced by an erroneous view of the law. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987); *accord Western Capital & Sec., Inc. v. Knudsvig*, 768 P.2d 989, 991 (Utah Ct.App.1989).

█ The Smiths, in challenging the trial court's factual finding, must proceed in two steps: the Smiths must first marshal all the evidence that supports the trial court's finding, and then demonstrate that, despite this evidence, the finding is so lacking in support as to be "against the clear weight of the evidence" and, thus, clearly erroneous. *Doelle v. Bradley*, 784 P.2d 1176, 1178 (Utah 1989); *see also Grayson Roper Ltd. Partnership v. Finlinson*, 782 P.2d 467, 470 (Utah 1989); *Fitzgerald v. Critchfield*, 744 P.2d 301, 304 (Utah Ct.App.1987).

The Smiths have failed to marshal the evidence in support of the trial court's finding that Linmar Energy's selection of the well site was reasonable and practical. Thus, we affirm the trial court's decision that the placements of the well and road were not unreasonable.

## DAMAGES

■ The Smiths also claim the district court should have taken a condemnation approach in its calculation of damages. They argue that the court should have utilized the "highest and best use" approach in assessing damages to the land which they claim would require valuing the property as residential. Further, they claim the court erred in not allowing severance damages to the surrounding land. The Smiths cite no authority for their novel claim that condemnation theories should be used to assess damages in this private contract dispute between a fee owner and an oil and gas lessee.

Other jurisdictions that have considered the issue have rejected such an approach. *O'Connor v. Great Lakes Pipe Line Co.,* 63 F.2d 523, 525 (8th Cir.1933); *Fulkerson v. Great Lakes Pipe Line Co.,* 335 Mo. 1058, 75 S.W.2d 844, 846 (1934). It is the language of the parties' contract that controls the damages allowable in a private dispute between a fee owner and a mineral lessee. *See Fulkerson,* 75 S.W.2d at 844; *see also Phillips Petroleum Co. v. Morris,* 518 S.W.2d 444, 446 (Tex.Ct.App.1975) (the specific lease provision did not extend liability to cover the indirect loss of value of the remaining land, but only covered losses resulting from actual authorized use of the land). Commentators note, "[t]he lessee's liability on his covenant contained in the surface damage clause will be governed by the specific provisions of the clause, and the lessor will recover those damages specified and contemplated by the parties." 4 Kuntz, *Oil and Gas* § 49.4 (1972).

Furthermore, documents conveying mineral interests are subject to the general principles governing the interpretation of contracts. *Miller v. Schwartz,* 354 N.W.2d 685, 688 (N.D.1984). "The cardinal rule is to give effect to the intentions of the parties and, if possible, to glean those intentions from the contract itself." *Heiner v. S.J. Groves & Sons Co.,* 790 P.2d 107, 110 (Utah Ct.App.1990) (quoting *LDS Hosp. v. Capital Life Ins. Co.,* 765 P.2d 857, 858 (Utah 1988)); *see also G.G.A., Inc. v. Leventis,* 773 P.2d 841, 845 (Utah Ct. App.1989).

Paragraph 8 of the parties' lease states that the lessee "shall pay for damage caused by its operations to growing crops on said land." The trial court correctly focused on this contractual language of the lease in assessing damages. The trial court found that the well site rendered 4.76 acres of the Smiths' land unusable for agricultural purposes and thus awarded damages under the liberal reading of the "growing crops" damage clause as interpreted in *Flying Diamond Corp. v. Rust,* 551 P.2d 509, 512 (Utah 1976).[1] The Smiths also challenge the factual findings of the trial court as to the residual value of the land. Again they fail to marshal the evidence in support of the trial court's ruling and thus we also affirm the trial court on this issue. *Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989); *Grayson Roper Ltd. Partnership v. Finlinson,* 782 P.2d 467, 470 (Utah 1989).

## PREJUDGMENT INTEREST

■ The Smiths also challenge the trial court's refusal to award them prejudgment interest. A court can award prejudgment interest only when the loss is fixed at a particular time and the amount can be fixed with accuracy. *Parents Against Drunk Drivers v. Graystone Pines Homeowners' Ass'n,* 789 P.2d 52, 58–59 (Utah

1. The Smiths argue that *Flying Diamond* allowed "severance" damages. We find their reading of *Flying Diamond* in error. In *Flying Diamond,* the court did award damages caused by the *unreasonable* placement of the access road. However, the court awarded the damages because the road prevented the irrigation of 15 acres of additional property and thus destroyed its use for agricultural purposes. Thus, the court was merely applying the "growing crops" measure of damages found in the contract.

Ct.App.1990) (citing *Jorgensen v. John Clay & Co.*, 660 P.2d 229, 233 (Utah 1983)). In *First Sec. Bank v. J.B.J. Feedyards, Inc.*, 653 P.2d 591 (Utah 1982), the court held:

> On the other hand, *where damages are incomplete or cannot be calculated with mathematical accuracy,* such as in the case of personal injury, wrongful death, defamation of character, false imprisonment, etc., the amount of the damage must be ascertained and assessed by the trier of fact at the trial, and in such cases *prejudgment interest is not allowed.*

*Id.* at 600 (quoting *Bjork v. April Indus., Inc.*, 560 P.2d 315, 317 (Utah), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977)).

> This court has noted that
>
> [f]or damages to be calculable with mathematical certainty, they must be ascertained in accordance with fixed rules of evidence and known standards of value, which the court or jury must follow in fixing the amount, rather than be[ing] guided by their best judgment in assessing the amount to be allowed for past as well as for future injury, or for elements that cannot be measured by any fixed standards of value.

*Price–Orem v. Rollins, Brown & Gunnell*, 784 P.2d 475, 483 (Utah Ct.App.1989) (quoting *Fell v. Union Pac. Ry. Co.*, 32 Utah 101, 88 P. 1003, 1007 (1907)). This court has stated that "damages ascertained by determining the fair market value of real property before and after the damage 'cannot be determined with mathematical precision [and] may be inherently uncertain.'" *Price–Orem*, 784 P.2d at 483 (quoting *Anderson v. Bauer*, 681 P.2d 1316, 1325 (Wyo.1984)). *Cf. Canyon Country Store v. Bracey*, 781 P.2d 414, 423 (Utah 1989) (loss-of-profits damages found too speculative to allow for prejudgment interest).

It is undisputed that the damage to the Smiths' property was complete and that the loss was fixed in August 1983, the time that Linmar Energy began operations on the Smith parcel. However, under the controlling authority, we believe the trial court correctly found the damages could not be calculated with sufficient accuracy to support an award of prejudgment interest. The contractual crop damages at issue are not ascertainable in accordance with fixed rules of evidence and known standards of value. They are the type of damages which are not easily calculated and must be ascertained by the general judgment of the fact finder at the time of trial.

In summary, we affirm the ruling of the trial court on the issues of the measure of damages and prejudgment interest.

DAVIDSON and BENCH, JJ., concur.