**SHORELINE DEVELOPMENT, INC., a Utah corporation, Milton Jones, and Milton Hanks, Plaintiffs, Appellees, and Cross–Appellants,**

v.

**UTAH COUNTY and American Fork City, Defendant, Appellant, and Cross–Appellee.**

No. 910241–CA.

Court of Appeals of Utah.

July 10, 1992.

Kay Bryson and Jeril B. Wilson, Provo, for appellant.

Gregory J. Sanders, Salt Lake City, for appellees.

Before BENCH, BILLINGS and RUSSON, JJ.

### AMENDED OPINION ON REHEARING *

BENCH, Presiding Judge:

Shoreline Development, Inc., brought suit against Utah County for services rendered by Shoreline in obtaining dredging pumps intended to be used by the County on Utah Lake. The trial court entered a partial directed verdict in the County's favor dismissing Shoreline's contract claims. Shoreline's unjust enrichment claim, however, was sent to the jury. The jury found in Shoreline's favor and awarded it $94,000 for the services rendered. The County appeals and Shoreline cross-appeals. We affirm.

### FACTS

In 1985, Shoreline entered into an agreement with American Fork City [1] to operate a boat harbor the City owned on Utah Lake, which is located in Utah County. It was determined that a dredge was necessary to develop the harbor. Shoreline began to investigate ways of obtaining a dredge and ended up working with William Arseneau, the Director of State Surplus Property. They identified certain surplus federal government dredges that could be released for use on this project. The principals of Shoreline spent many hours working on the project in 1985. Beginning in the early part of 1986, they were each working on the project an estimated 50 to 60 hours per week.

In mid-March, 1986, a meeting was held with the Utah County Commission to discuss the work being done by Shoreline for American Fork. All three of the county commissioners attended, as well as Clyde Naylor, the county engineer. During the meeting, Shoreline outlined a proposal whereby it would obtain a dredge for the County and be given the exclusive rights to operate it on Utah Lake. Shoreline indicated it was focusing its efforts upon the

dredge *"Harding"* which belonged to the Army Corps of Engineers and was located in Portland, Oregon. The dredge had two large dredging pumps that could be salvaged for the County. The Commission took a voice vote and authorized expenditure of $2,000 to get the project going.

Immediately after the meeting, Shoreline prepared a letter memorializing the agreement that had been reached with the commissioners. That letter was hand carried to the Commission the next day. When the written memorialization of the agreement was delivered, a check for $2,000 was given to Shoreline. No express written contract was executed by the parties.

Shoreline then moved forward under the understanding it had an agreement with the County to obtain a dredge and set up business operations on Utah Lake. Shoreline presented the County with written reports concerning its investigation. Shoreline again met with two of the county commissioners to discuss the project in general, and the dredge *Harding* in particular. Shoreline claims that the commissioners again took an express oral vote and specifically authorized Shoreline to proceed with obtaining a dredge for the County. One of the principals of Shoreline remembers a commissioner specifically stating that no bid process was required in order for the agreement to be made.

After this second meeting with the commissioners, Shoreline continued to work towards obtaining the dredging pumps off the *Harding* for the County. In early June of 1986, it became known that the dredging pumps were going to make it to Utah. The principals of Shoreline then met with the county commissioners and other officials, including the mayor of American Fork. They were totally surprised in that meeting when the commissioners thanked them for their efforts in obtaining the dredging pumps and then told them that there was no deal in place. One of the commissioners suggested that Shoreline submit a bill.

---

* Replaces this court's opinion of the same name filed on May 19, 1992 (187 Utah Adv.Rep. 26).

1. American Fork has settled with Shoreline and is not a party to this appeal.

After Shoreline had been excused from the deal, the government paperwork was completed and the dredging pumps were delivered to the County. The county's engineer signed one document acknowledging that the value of the dredge was $6,022,563. County commissioner Gary Anderson, in accepting the dredge, also signed a document acknowledging its value at $6,022,563.

Shoreline presented a bill for $250,000 to the County for the value of its services in obtaining the dredge. The County refused to pay the bill and Shoreline brought suit. Shoreline claimed the County was liable under an express contractual agreement that Shoreline would obtain a dredge for the County. In the alternative, Shoreline claimed that if there was no express contract, the County was liable under an implied-in-fact contract as evidenced by the work actually performed by Shoreline. As a final alternative, Shoreline claimed that the County was liable for the unjust enrichment it received from Shoreline's efforts.

At the close of Shoreline's evidence, the County moved for a directed verdict as to the express contract and the implied-in-fact contract claims. The County argued that it was protected from any contractual claims because it did not act in accordance with state code or its own customary practices in dealing with Shoreline and therefore it could not be bound by those acts. The County conceded at that time that the unjust enrichment claim could properly be presented to the jury. The trial court agreed and granted a directed verdict in favor of the County on Shoreline's first two claims. The County then rested, without putting on any case of its own, and the unjust enrichment claim was sent to the jury. The jury awarded Shoreline $94,000 for services rendered. Shoreline then requested prejudgment interest on the $94,000, but the trial court denied the request.

The County appeals, claiming it is shielded from the unjust enrichment claim by Utah Code Ann. § 17-4-5 (1991) (corporate powers of a county), and by Utah Code Ann. § 63-30-3 (1989) (the Utah Governmental Immunity Act).[2] The County also challenges the sufficiency of the evidence as to whether it received a benefit from Shoreline's efforts. And finally, the County claims that the trial court erred in refusing to allow the jury to take into the jury room a deposition that had been read into evidence. Shoreline cross-appeals the denial of prejudgment interest, claiming that interest may be awarded in an unjust enrichment case.[3]

## UNJUST ENRICHMENT

### Defenses

■ The County asserts that Shoreline's unjust enrichment claim is precluded by Utah Code Ann. § 17-4-5 (1991). This defense was not raised below. We will not address issues raised for the first time on appeal. *See Zions First Nat. Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 654 (Utah 1988).

■ The County also asserts that Shoreline's unjust enrichment claim is barred by the Governmental Immunity Act, Utah Code Ann. § 63-30-3 (1989), because the County was acting in an effort to control flooding. The supreme court has clearly held that "[g]overnmental immunity may not be used as a defense to equitable claims...." *Board of Educ. of Granite School Dist. v. Salt Lake County*, 659 P.2d 1030, 1036 (Utah 1983) (quantum meruit claim upheld where county "acquiesced in the receipt of the benefit").[4] Shoreline's

---

**2.** The Governmental Immunity Act has since been amended, but without change to the relevant language. *See* section 63-30-3(3) (Supp. 1991).

**3.** Shoreline also cross-appeals the dismissal of its contract claims but only requests that we address these issues if we reverse the unjust enrichment award. Inasmuch as we affirm the

judgment, we need not address the trial court's legal conclusions as to the first two claims.

**4.** *See, e.g., Concrete Products Co. v. Salt Lake County*, 734 P.2d 910, 911-12 (Utah 1987) (quantum meruit claim was recognized as permissible, but claim failed for lack of evidence that county was directly benefitted); *Breitling Bros. Constr., Inc. v. Utah Golden Spikers, Inc.*, 597 P.2d 869, 872 (Utah 1979) (remanded for further

unjust enrichment claim is therefore not barred by the Governmental Immunity Act.

## Sufficiency of the Evidence

[3] The County challenges the sufficiency of the evidence to support a finding that the County received a benefit in the amount of $94,000. In particular, the County argues that the benefit of Shoreline's services could not have been $94,000 because the County received no "net benefit" from obtaining the dredge. After the dredging pumps were removed from the dredge, the County never made use of them. The County argues that it was simply unable to find a way to retrofit the dredging pumps for use on Utah Lake. In fact, the federal government ultimately repossessed them. The County errs, however, in focusing on the "net benefit" of the entire transaction. The appropriate benefit upon which Shoreline's unjust enrichment claim is based, and upon which damages must be awarded, is the service rendered by Shoreline in obtaining the dredge. The fact that following the receipt of this benefit the County was unsuccessful in making a profitable use of the dredge is immaterial to the valuation of Shoreline's services. The County, not Shoreline, bore the risk the venture might fail.

The County has failed to satisfy its burden of marshaling the evidence in support of the jury's holding that it received a benefit worth $94,000. *Hodges v. Gibson Prod. Co.*, 811 P.2d 151, 156 (Utah 1991) (appellant must set out all evidence that supports jury verdict, including all valid inferences, and demonstrate "that reasonable persons would not conclude that the evidence supports the verdict"). The County does marshal the evidence showing the efforts of Shoreline and attempts to counter it with some evidence of the efforts expended by the County and the State in an apparent attempt to show that Shoreline was not the sole party involved in obtaining the dredge. The primary focus of the County's marshaling, however, is on whether it received any "net benefit" from the venture. The County has not marshaled the evidence in support of the $94,000 award. Nowhere in the County's attempt to marshal is there any indication that the services rendered in obtaining the dredge were not worth $94,000. We therefore do not disturb the jury award. *See, e.g., State v. Christofferson*, 793 P.2d 944, 947 (Utah App.1990) (when appellant fails to marshal, reviewing court presumes that the holding is adequately supported by the clear weight of the evidence).

## DEPOSITION

During its deliberations, the jury requested that the deposition of William Arseneau be sent into the jury room. Due to the unavailability of Arseneau, his deposition had been read in its entirety to the jury during the trial. The trial court refused to allow the deposition to be sent to the jury room because Arseneau's written testimony might receive more weight than other oral testimony. The County argues that the trial court erred in not allowing the jury to review the deposition.

Under Utah Rule of Civil Procedure 47(m), the jury may not take depositions with them when they deliberate.[5] The question of whether written testimony should be allowed in the jury room has already been addressed in *State v. Solomon*, 96 Utah 500, 87 P.2d 807, 811 (1939), wherein the supreme court held: "The law does not permit depositions or witnesses to go to the jury room."[6]

In light of Rule 47(m) and the supreme court's unequivocal holding that depositions are not permitted in the jury room, we find no error.

---

proceedings regarding quantum meruit claim against the state when trial court dissuaded plaintiff from presenting claim).

5. Rule 47(m) provides, in relevant part and with our emphasis, "[u]pon retiring for deliberation the jury may take with them the instructions of the court and all exhibits and all papers which

have been received as evidence in the cause, *except depositions....*"

6. The supreme court reaffirmed its holding in *Solomon* in *State v. Davis*, 689 P.2d 5, 14–15 (Utah 1984).

## PREJUDGMENT INTEREST

■ In its cross-appeal, Shoreline challenges the trial court's refusal to award prejudgment interest on the $94,000 unjust enrichment award. Shoreline asserts that prejudgment interest should be available because an unjust enrichment claim falls somewhere between the poles of express contract claims, where prejudgment interest is often allowed, and tort claims, where prejudgment interest is seldom allowed. In particular, Shoreline asserts that the similarity between an unjust enrichment claim and a contract claim weighs in favor of awarding prejudgment interest. Shoreline's reliance on the nature of the claim, however, is misplaced.

■ The determining factor in awarding prejudgment interest is whether the damages upon which prejudgment interest is sought can be calculated with mathematical certainty. *See, e.g., Jack B. Parson Constr. Co. v. State*, 552 P.2d 107, 108–09 (Utah 1976) (amount due under the contract was ascertainable by calculation). "A court can award prejudgment interest only when the loss is fixed at a particular time and the amount can be fixed with accuracy." *Smith v. Linmar Energy Corp.*, 790 P.2d 1222, 1225 (Utah App.1990). If the jury must determine the loss by using its best judgment as to valuation rather than fixed standards of valuation, prejudgment interest is inappropriate. *Id. See Bjork v. April Indus., Inc.*, 560 P.2d 315, 317 (Utah) *cert. denied*, 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977) (where damages cannot be calculated with mathematical accuracy, the *amount* of the damage must be ascertained and assessed by the trier of fact and prejudgment interest is not allowed); *Fell v. Union Pac. Ry. Co.*, 32 Utah 101, 88 P. 1003, 1006 (1907) ("In all ... cases where the damages are incomplete and are peculiarly within the province of the jury to assess at the time of the trial, no interest is permissible.").

The Utah Supreme Court recently indicated that the lack of mathematical certainty generally prevents an award of prejudgment interest in equity claims.

A survey of our cases where prejudgment interest was awarded indicates that interest has been allowed in actions for damage to personal property, in actions brought on a written contract, and in an action to recover a liquidated overpayment of water subscription charges. In many of these cases, we stressed that the loss had been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages. No case has been cited to us where we have allowed prejudgment interest in an action such as the instant case, which is for equitable relief. "A suit of this nature ... invokes consideration of the principles of equity which address themselves to the conscience and discretion of the trial court." In view of the highly equitable nature of this action where the court has discretion in determining the amount, if any, to be [awarded to the plaintiff], we find no error in the denial of prejudgment interest.

*Bellon v. Malnar*, 808 P.2d 1089, 1097 (Utah 1991) (citations omitted) (quoting *Fullmer v. Blood*, 546 P.2d 606, 610 (Utah 1976)).

Shoreline asserts that there is a public policy ground for awarding interest in equity cases despite the uncertainty of the damages. While we recognize Shoreline's concern that injured parties be made whole, we find that this concern is adequately addressed by reason of the fact that equity plaintiffs may claim lost interest as part of their damages. *Uinta Pipeline Corp. v. White Superior Co.*, 546 P.2d 885, 887 (Utah 1976) (where justice and equity require, interest may be awarded as part of the damages). Since a jury has discretion to award interest as part of an equity judgment, there is a risk of double recovery if prejudgment interest may be added to a jury's equity award by the trial court who does not know whether the jury's award covers interest. In order to prevent such double recovery, we presume that if the claimant was entitled to any interest, it was awarded by the jury as part of the equity award.

■ Given the risk of double recovery, and in light of the supreme court's ruling in *Bellon,* we hold that prejudgment interest must be sought directly as damages in unjust enrichment cases, if at all. Prejudgment interest may not be subsequently added by a trial court to a jury's award for unjust enrichment. We therefore find no error in the trial court's refusal to award Shoreline prejudgment interest on the $94,-000 judgment awarded by the jury.

## CONCLUSION

As to the County's appeal of the judgment for unjust enrichment, the County failed to raise its statutory defense below so we do not address it for the first time on appeal. Furthermore, the county may not raise governmental immunity as a defense against an equitable claim for unjust enrichment. As to the assertion that the trial court erred in refusing to allow the deposition in the jury room, we find no error. As to Shoreline's cross-appeal requesting prejudgment interest, we also find no error. The judgment is therefore affirmed.

BILLINGS and RUSSON, JJ., concur.