SAWAYA, C.J.
Nancy Noblin appeals a partial summary judgment in favor of Harbor Hills Development and Charles Schell rendered in a suit to quiet title concerning certain property located in Lake County, Florida. The partial summary judgment extinguishes Noblin’s right of access to the property owned by Harbor Hills and Schell to exercise certain oil and mineral rights Noblin has in the property. The specific issues we must resolve are: 1) whether Noblin has an easement, express or implied, that allows her ingress and egress to the subject property to search for and extract the oil and mineral deposits thereon; and 2) if Noblin has such an easement, whether it has been extinguished by the Marketable Record Titles To Real Property Act (MRTA) found in chapter 712, Florida Statutes. In order to resolve these issues, we will explain the factual background followed by a discussion of each issue in the order presented.

Factual Background

We note at the outset that the facts related to’ the history of the underlying action are convoluted due to the interrelationship between the original owners of the property interests and the current heirs and interested parties. For purposes of the issues we must resolve, we will only relate the facts and the essential deraignment of title to the property that affect resolution of those issues.
William Dietrich owned certain property in Section 1, Township 18 South, Range 24 East located in Lake County, Florida. The property that is the subject of the instant proceeding consists of a portion of the East one-half of Section 1, Township 18 South, Range 24 East. Dietrich executed a deed, which Included the property subject to the instant proceeding, to D.O. Rainey and his wife, Gladys. This deed made no mention of any separate oil or mineral rights.
On October 1, 1948, the Raineys executed a deed that conveyed one-half of the oil and mineral rights on the subject property to E.C. Huey. Specifically, this deed provided in pertinent part that Rainey conveyed to Huey “[o]ne-half of the mineral and oil rights, including the right to exploit the same .... ”
On October 22, 1950, the Raineys conveyed the subject property to A.M. Collins and several other grantees by a deed that made no mention of the previously conveyed oil and mineral interest to Huey. Harbor Hills and Schell correctly assert, as we will later explain, that this deed constitutes the root of title to them property under MRTA. It is not necessary to list and discuss all of the instruments of conveyances in the chain of title. For purposes of the issues we must resolve, suffice it to say that Harbor Hills acquired title to the majority of the subject property through a deed recorded in 1994 and to the remainder of the property by a deed recorded in 2000. Harbor Hills subsequently conveyed a portion of the property to certain grantees, who in turn conveyed the property to Schell.
Harbor Hills initiated a suit, later joined by Schell as a party plaintiff, to quiet title to the subject property against a number of defendants, including Wilma Boyles, who was an heir of Huey. After Boyles died, her heir, Noblin, became a party defendant. Although Harbor Hills and Schell did not contest Noblin’s ownership of one-half of the oil and mineral rights, they did file a motion for summary judgment asserting that Noblin did not have an easement interest in the property or, alternatively, that any easement previously created had been extinguished under MRTA. The trial court agreed with Harbor Hills and Schell and entered the partial summary judgment that we now review.
Having discussed the factual background and the pertinent deraignment of *783 the title to the subject property, we will address the first issue previously presented, which is whether an easement was created in favor of Noblin.
Whether An Easement, Expressed Or Implied, Was Created
In order to determine whether Noblin, as successor in interest to Huey and heir of Boyles, has an easement, we must analyze the pertinent provisions of the 1948 deed from the Raineys to Huey. When the Raineys executed the deed, they included the following provision to describe the interest conveyed to . Huey: “One-half of the mineral and oil rights, including the right to exploit the same ....” Noblin contends that the provision “right to exploit the same” conveys an easement that allows her the right to enter the property to search for and extract one-half of the oil and minerals located thereon. We ágree. We note the plain meaning of “exploit” is generally to employ to the greatest extent possible, i.e., “to put to productive use.” Webster’s New Collegiate Dictionary 438 (9th ed.1989). Accepting Noblin’s uncontested ownership of the one-half oil and mineral rights in the subject property, then the logical productive use of this interest would be to search for and extract the oil and minerals for consumer or other use. Hence, it appears to us that the intent of the parties in accordance with the plain meaning of the language employed in the deed, which is what we must consider to discern the meaning of the pertinent provisions in the deed, was to convey an easement to Huey for ingress and egress onto the subject property to search for and remove one-half of the oil and mineral deposits located thereon. This interpretation comports with the general rule we next discuss regarding the creation of an implied easement when a grant of oil and mineral rights is contained in an instrument of conveyance.
The general rule alluded to provides that a reservation or grant of oil and mineral rights reflects an intent on the part of the parties to sever the surface estate from the underlying mineral estate and create two separate estates. Trustees of Tufts College v. Triple R. Ranch, Inc., 275 So.2d 521, 525-26 (Fla.1973) (‘When the surface estate and the mineral estate are severed, they remain independent. Possession of one does not carry with it possession of the other.”); P & N Inv. Corp. v. Florida Ranchettes, Inc., 220 So.2d 451 (Fla.1968). This is the view adopted by the courts in many other jurisdictions.[1] In Tufts College, the Florida Supreme Court recognized, citing the decision in P & N Investment, that when the surface estate and the mineral estate are severed, the mineral estate is dominant *784 over the surface estate allowing the mineral estate owner the right of ingress and egress over' the surface estate to explore, locate, and remove the minerals. The court in P & N Investment explained this rule more fully:.
We are convinced that the weight of authority in the country, especially in the major oil-producing states, is as follows: When the surface estate is severed from the mineral estate, the mineral estate is the dominant estate and, therefore, the owner of the mineral estate has the right of ingress and egress to explore for, locate, and remove the minerals, but he cannot so abuse the surface estate so as unreasonably to injure or destroy its value and is answerable in damages to the owner of the surface estate for any unreasonable injuries done.
One of the leading cases recognizing the just-summarized rule is Parker v. Texas Co., 326 S.W.2d 579 (Tex.Civ.App.1959). For the citations to many cases upholding this rule see 58 C.J.S. Mines and Minerals § 159, pages 332 and 333.
P & N Investment, 220 So.2d at 453; see also Corad v. Hogan, 515 So.2d 1064 (Fla. 5th DCA 1987), review denied, 525 So.2d 878 (Fla.1988); Hill v. Bridgers, 397 So.2d 1212, 1214 (Fla. 2d DCA 1981) (“[A]n owner of an interest in minerals is entitled to enter the land and explore for minerals without liability to the surface owner as long as injury to the surface is reasonable.”) (citation omitted).
Based on the general rule adopted by the Florida courts, a grant or reservation of oil and mineral rights implies an easement for ingress and egress to explore for and remove the oil and minerals found on or underneath the surface estate. Decisions in many other jurisdictions adopt this view.[2] We conclude that even if “the *785 right to exploit” provision was not included in the 1948 deed from Rainey to Huey, an implied easement was granted to Huey for the purpose of exploration and extraction of the oil and minerals located on the surface estate.
Having determined that Noblin, as successor in interest to Huey, has an easement for ingress and egress in the surface estate owned by Harbor Hills and Schell, we must next determine whether that easement is extinguishable under MRTA.

Whether MRTA Applies To Extinguish The Easement

“Section 712.02 of MRTA expressly provides that any person vested with any estate in land of record for thirty years or more shall have a marketable record title free and clear of all claims of an interest in land except those preserved by section 712.03 ....” H & F Land, Inc. v. Panama City-Bay County Airport & Indus. Dist., 736 So.2d 1167, 1171 (Fla.1999), receded from on other grounds, Blanton v. City of Pinellas Park, 887 So.2d 1224, 29 Fla. L. Weekly S614 (Fla. Oct. 21, 2004); see also Cirelli v. Ent, 885 So.2d 423 (Fla. 5th DCA 2004). The rights or interests in land subject to extinguishment by MRTA include “rights of entry or of an easement, given or reserved in any conveyance or devise of realty, when given or reserved for the purpose of mining, drilling, exploring, or developing for oil, gas, minerals, or fissionable materials, unless those rights of entry or easement are excepted or not affected by the provisions of s. 712.03 or s. 712.04.” § 704.05(1), Fla. Stat. (2002); see also H & F Land (holding that a common law way of necessity is an easement that arises from an implied grant or reservation of an interest in land and is extinguishable by MRTA). It is clear that an expressed or implied easement for ingress and egress to explore for and extract oil and minerals from the surface estate is an interest that may be extinguished by MRTA, provided the other requirements of MRTA are met.
MRTA requires that in order to extinguish an interest in real property, that interest must have existed prior to the root of title. Cirelli. The root of title is defined as “any title transaction purporting to create or transfer the estate claimed by any person and which is the last title transaction to have been recorded at least 30 years prior to the time when the marketability is being determined.” § 712.01(2), Fla. Stat. (2002). The root of title to the property owned by Harbor Hills and Schell is the deed from Rainey to Collins dated May 22, 1950. This deed does not mention in any way the one-half interest in mineral and oil rights conveyed two years earlier by Rainey to Huey, and it does not mention or identify any easement, expressed or implied, that may have been created at the time the prior deed *786 from Rainey to Huey was executed. Because the prior deed from Rainey to Huey creating the easement for ingress and egress predates the root of title, it may be extinguished by MRTA unless an exception applies. It is important to emphasize that the trial court’s order granting partial summary judgment only holds that the easement is extinguished by MRTA, not the actual oil and mineral rights owned by Noblin.
The exceptions to MRTA that may be pertinent to the instant case are found' in section 712.03(1), Florida Statutes, relating to easements disclosed in the muniments of title and section 712.03(5), Florida Statutes, relating to prior use of the easement by Noblin and her predecessors in title. We must next determine whether these exceptions apply.
The exception under section 712.03(1) preserves “[ejstates or interests, easements and use restrictions disclosed by and defects inherent in the muniments of title on which an estate is based beginning with the root of title .... ” § 712.03(1), Fla. Stat. (2002). This exception has been narrowly construed by the courts, which limit its application to easements or interests disclosed on the face of an instrument. See H & F Land, 736 So.2d at 1173; ITT Rayonier, Inc. v. Wadsworth, 346 So.2d 1004 (Fla.1977). As we have indicated, the 1950 root of title from Rainey to Collins does not mention the prior grant of oil and mineral rights or any easement associated therewith. Noblin contends that a 1980 deed from SunBelt Investments to Ojay Corporation that references the 1948 deed from Rainey to Huey by official record book and page number sufficiently complies with the exception. The partial summary judgment shows the trial court did not resolve this particular issue. Because this issue raises questions of law and fact that need to be resolved by the trial court, the partial summary judgment rendered in favor of Harbor Hills and Schell must be reversed.
Noblin argues that the use exception found in section 712.03(5), Florida Statutes (2002), applies to salvage her easement. This statute provides in pertinent part that excepted from extinguishment under MRTA are “[r]ecorded or unrecorded easements or rights, interests or servitude in the nature of easements ... so long as the same are used and the use of any part thereof shall except from the operation hereof the right to the entire use thereof.” § 712.03(5), Fla. Stat. (2002). Noblin presented affidavits from several witnesses that indicate the easement was in fact used on many occasions by Huey and that clay, sand, limestone, and other minerals were extracted from the property. Noblin also states in her reply brief that at the summary judgment hearing, she clearly stated that she and others “could attest that on many occasions, sand, clay, limestone, and other .minerals had been removed from (but not limited to), the subject Property.” The affidavit of Wilma Boyles, executed prior to her death, stated that Huey used minerals from the subject property “throughout [his] lifetime” and that he “spent a great deal of time and money in pursuit” of “oil and natural gas.”
Harbor Hills and Schell make two arguments in opposition to Noblin’s use exception. First, they argue that the affidavits presented by Noblin consist of conclusory and hearsay statements and do not provide information regarding the particular uses of the easement with any specificity. Second, they contend that clay, sand, and limestone are not minerals, and in support of that argument they cite section 689.20, Florida Statutes, enacted in 1959, which provides that “Whenever the word ‘minerals’ is hereafter used in any deed, lease, or other contract in writing, said word or term shall not include any of the following: *787 topsoil, muck, peat, humus, sand, and common clay, unless expressly provided in said deed, lease, or other contract in writing.” Noblin contends that this law, unchanged since its enactment, expressly provides for prospective application and, therefore, it is inapplicable given the fact that the 1948 deed creating the easement was executed and recorded before the statute was enacted.
As to the first argument, we disagree that all of the evidence and statements in the affidavits presented by Noblin are conclusions and hearsay. Harbor Hills and Schell acknowledge that we must view the evidence presented by Noblin in the light most favorable to her, and if any doubt exists as to whether there are any issues of material fact, summary judgment is inappropriate. See Krol v. City of Orlando, 778 So.2d 490 (Fla. 5th DCA 2001). Because the easement allows for exploration and extraction, we conclude that when the evidence presented by Noblin is viewed in the proper light, questions of fact exist regarding the use of the property by Huey to explore for minerals on the surface estate. As to the second argument, notwithstanding the provisions of section 689.20,[3] we agree with Harbor Hills and Schell that clay, sand, topsoil, and limestone may not be minerals within the meaning of the 1948 deed from Rainey to Huey. See Florida Audubon Soc’y v. Ratner, 497 So.2d 672 (Fla. 3d DCA 1986), review denied, 508 So.2d 15 (Fla.1987). Nevertheless, we conclude that factual issues remain regarding what “other minerals” may have been extracted in the past from the surface estate by Huey or his successors in interest.

Conclusion

Noblin has an easement for ingress and egress to explore for and extract one-half of the oil and mineral deposits on the subject property. This easement may be extinguished under MRTA; however, material issues of law and fact exist regarding the two exceptions under MRTA previously discussed that preclude entry of summary judgment. Therefore, the partial summary judgment rendered in favor of Harbor Hills and Schell is hereby reversed, and this case is remanded for further proceedings.
REVERSED and REMANDED.
SHARP, W. and GRIFFIN, JJ., concur.

. See Bodcaw Lumber Co. v. Goode, 160 Ark. 48, 254 S.W. 345 (1923); Nevada Irrigation Dist. v. Keystone Copper Corp., 224 Cal.App.2d 523, 36 Cal.Rptr. 775, 778 (1964) ("The owner of real.property may divide his lands horizontally as well as vertically, and when he conveys the subsurface mineral deposits separately from the surface rights, or reserves them from a conveyance of such surface rights, he creates two separate fee simple estates in the land, each of which has the same status and rank.”) (citations omitted); Jilek v. Chicago, Wilmington & Franklin Coal Co., 382 Ill. 241, 47 N.E.2d 96, 98 (1943) ("It has long been recognized in this State that mineral rights may be severed from the surface rights and conveyed separately, and that two estates are thus created in the land, each of which is distinct, and each of which may be conveyed or devised, and each is subject to taxation.”) (citations omitted); Maynard v. McHenry, 271 Ky. 642, 113 S.W.2d 13 (1938); Calvert Joint Venture # 140 v. Snider, 373 Md. 18, 816 A.2d 854 (2003); Groves v. Terrace Mining Co., 340 S.W.2d 708, 710 (Mo.1960) ("The owner of land containing minerals may segregate the surface rights from the underlying minerals by a conveyance in writing so that there is a complete severance of title and separate estates are created.”) (citations omitted); Flying Diamond Corp. v. Rust, 551 P.2d 509 (Utah 1976).

. See Rocky Mountain Fuel Co. v. Heflin, 148 Colo. 415, 366 P.2d 577, 580 (1961) ("The owner of a mineral estate has rights of ingress, egress, exploration, and surface usage as are reasonably necessary to the successful exploitation of his interest.”) (citations omitted); Slade v. Rudman Res., Inc., 237 Ga. 848, 230 S.E.2d 284, 285 (1976) ("It is established law in this state that a grant of minerals conveys, by implication, the rights of ingress and egress, and possession of the surface necessary to the use and enjoyment of the estate conveyed.”) (citation omitted); Jilek v. Chicago, Wilmington & Franklin Coal Co., 382 Ill. 241, 47 N.E.2d 96, 100 (1943) ("There appears to be little doubt when the mineral estate is severed from the surface estate that with the mineral estate all means to attain it are also granted for the purpose of enjoying it. This is because it is presumed the grantor intended to convey, and the grantee expected to receive, the full benefit of the mineral estate, and therefore the grantor not only conveyed the thing specifically described, but all other rights and privileges necessary to the enjoyment of the thing granted.”) (citations omitted); Calvert Joint Venture #140 v. Snider, 373 Md. 18, 816 A.2d 854, 873 (2003) ("[Ojnce the mineral rights have been reserved (or granted) and the whole estate has been encumbered by the instrument of conveyance, some other states have found that the reservation, conveyance or leasing of mineral rights includes an implied easement for the owner of those rights to ingress, egress, occupy and use the surface of land, as reasonably necessary, for the purpose of extracting those minerals in the absence of specific language granting those rights.”) (footnote omitted) (citations omitted); Melton v. Sneed, 188 Okla. 388, 109 P.2d 509, 512 (1940) ("[W]e must assume that the grantors intended to convey what they could legally convey, namely, the right of ingress and egress necessary to develop and remove the oil and gas, there being nothing in the instrument or circumstances indicating a contrary intention. This right is analogous to a way of necessity implied where the land of a grantor is entirely surrounded by the land conveyed.”) (citations omitted); Flying Diamond Corp. v. Rust, 551 P.2d 509, 511 (Utah 1976) ("The general rule which is approved by all jurisdictions that have considered the matter is that the ownership (or rights of a lessee) of mineral rights in land is dominant over the rights of the owner of the fee to the extent reasonably necessary to extract the minerals therefrom.”) (footnote *785 omitted); Phillips v. Fox, 193 W.Va. 657, 458 S.E.2d 327, 332 (1995) ("It is well-settled that ownership of a mineral estate includes the right to enter upon and use the superjacent surface by such manner and means as is fairly reasonable and necessary to reach and remove the minerals.”) (citations omitted); Squires v. Lafferty, 95 W.Va. 307, 121 S.E. 90, 90-91 (1924) ("There being no question or contention as to ownership by the .plaintiff, Milam's Fork Smokeless Coal Land Company, of the coal underlying the entire 137 acres, it has also as incident to this ownership the right to use the 'surface' of the land in such manner and with such means as would be fairly necessary for the enjoyment of the mineral estate.”) (citations omitted); see also Kysar v. Amoco Prod. Co., 135 N.M. 767, 93 P.34 1272, 1278 (2004) (stating the general rule "that when an oil and gas lease grants to the lessee a particular tract of land for the purpose of exploring, drilling, mining and producing oil and gas, the lessee gains by implication the right to enter upon and use as much of the surface as may be necessary for the lessee's operations.”) (citation omitted); Sun Oil Co. v. Whitaker, 483 S.W.2d 808 (Tex.1972).

. While Noblin presents a persuasive argument regarding the prospective application of section 689.20, it is not necessary for us to decide that issue because, regardless of whether the statute is applied, material issues of fact exist regarding what other minerals may have been extracted from the surface estate.